Railroad v. Cooperage Co.

UNION RAILWAY COMPANY *v.* CHICKASAW COOPERAGE
COMPANY.

*(Jackson.*   April Term, 1906.)

1. **STARE DECISIS.** Rule of property established as to part of
a public promenade and public landing is applicable to the
whole thereof.

An adjudication and decision involving a part of a tract of land
dedicated to a city for a public promenade and public landing
and establishing a rule of property with respect thereto becomes
a rule of property as to the whole public promenade and public
landing, which must be adhered to by the courts, regardless of
the merits of the original legal controversy. (*Post, pp,* 611-615.)

Cases cited and approved: Memphis v. Wright, 6 Yer., 498; Wil-
kins v. Railroad, 110 Tenn., 442.

2. **SAME.** Same. Decisions that city may make any disposition
of a public promenade and public landing constitute a rule
of property giving it the right to divert it for a private use.

Decisions adjudicating that a municipal corporation was the own-
er of land within its corporate limits dedicated for a public
promenade and public landing, and had the right to make any
disposition of it authorized by its charter, though made in suits
not involving a diversion of the land to a private purpose, con-
stitute a rule of property which gives the city a right to divert
it to private uses. (*Post, pp.* 611-615.)

Cases cited and approved: Memphis v. Wright, 6 Yer., 498; Wil-
kins v. Railroad, 110 Tenn., 442.

3. **SAME.** Same. Same. Adjudication of city's power to lease
out portions of public landing for private purposes is con-
clusive as to subsequent leases, when.

A decision adjudicating that such portions of a tract of land ded-
icated for a public landing as are not needed for the use of the

Railroad v. Cooperage Co.

public for such purpose may be validly leased by the city to in-dividuals for private purposes, that such leases are not *ultra vires*, and cannot be rescinded at the suit of the city, unless the land is needed for the immediate use of the public for a public landing, is conclusive of the validity and enforceability of subse-quent leases executed by the city to individuals for private purposes. (*Post, pp.* 615-624.)

Case cited and approved:   Memphis v. Grace, MS., at Jackson, April term, 1874.

4. **EMINENT DOMAIN.** City's grant for railroad and terminal facilities on its public landing does not terminate its previous leases, and the railroad must compensate the lessees.

Where a city leases a part of the land, dedicated to it for a public landing, to individuals for private purposes, and thereafter grants, to a railroad corporation the right to construct railroad tracks and terminal facilities on such parts so leased, the rail-road's occupation thereof with its tracks and terminal facilities is exclusive and inconsistent with the rights of the indefinite public and necessarily excludes the public from that part of the landing, but having the consent of the city, it may so occupy and use the public landing, provided it exercises its right of em-inent domain, and makes compensation to the lessees. (*Post, pp.* 620-622.)

Case cited and distinguished:   Hardy v. Memphis, 10 Heis., 129.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

McFARLAND & CANOSLA, for complainant.

CARROLL, McKELLAR & BULLINGTON, for defendant.

MR. JUSTICE McALISTER delivered the opinion of the Court.

Complainant railway company, claiming the right under a grant from the city of Memphis to the use and occupation of a portion of the public landing situated upon the banks of Wolf river, exhibited this bill for the purpose, first, of having rescinded and annulled certain leases of said land by the city to the Chickasaw Cooperage Company, and to declare the use and occupation of said landing by the cooperage company a nuisance, and for the removal of its houses, improvements, sawmill, and lumber from said public property. The second object of the bill is to enjoin the further prosecution of a condemnation suit of the Union Railway Company against the Chickasaw Cooperage Company, pending in the circuit court of Shelby county.

The cooperage company answered the bill. On the final hearing, the chancellor sustained the bill of complainant, canceled the lease of the city of Memphis to the Chickasaw Cooperage Company, and ordered the removal of all obstructions from said public landing, so that the same might be used and enjoyed by the public for the purpose for which it was originally dedicated.

The cooperage company appealed and has assigned errors. The material allegations of the bill are:

(1) That at the time of the laying out of the city of Memphis originally upon the west part of the Rice 5000-acre tract the proprietors of said town site set aside and dedicated to the public use, as a wharf and public landing for all time, a strip of land situated upon the banks of Wolf river, a navigable tributary of the Mississippi river, and more particularly described as follows: "Beginning at a point 150 feet west of the intersection of the west line of Chickasaw or Front street with the south bank of Bayou Gayoso; thence down its south bank to Wolf river, and along and with the east bank of Wolf river to where the line of Auction street, if extended, would strike Wolf river; thence east along said extension of Auction street to a point within 150 feet of the west side of Chickasaw or Front street; thence north on a line parallel to Front street or Chickasaw street to the south bank of the Bayou Gayoso."

It is further charged in the bill that, because of the fact that some question had arisen as to the absolute dedication of said above described land to the public for a wharf and landing place, the original proprietors of the city of Memphis and their successors did on the 18th day of September, 1828, execute an instrument to put at rest forever any such doubts, and among other things there appears in said instrument the following language and declaration of trust with reference to said above-described wharf and public landing: "In relation to the

grant lying between the western boundary of the lots from Nos. 1 to 24, inclusive, and from the same line continued in a direct course to the south bank of the Bayou Gayoso and the eastern margin of Wolf and Mississippi rivers, and between Jackson street extended to the river and the said south bank of the bayou, it was the original intention of the proprietors that there should on said ground forever be a landing or landings for public purposes of navigation or trade, and that the same should be forever enjoyed for those purposes," etc.

(2) The bill further charges that said land was accepted by the public and by the city of Memphis for the purpose for which it was dedicated, and was for some years devoted to that use, and was used exclusively as a landing for public purposes of navigation and trade; but with the growing needs of the city of Memphis and its greatly increased commerce, requiring a larger public landing and more river front than had been originally set aside for that purpose, the strip of land appearing upon said plat of the original town site as the "Public Promenade" was also used for a public landing place and public wharf, in conjunction with said public landing above described.

(3) The bill further represents that said public landing is of especial and peculiar value to the city of Memphis and the public and to your complainant, in that it affords the only means of connection between the various carriers by rail entering the city of Memphis and the carriers by river; that it is only upon this landing, here-

inbefore described, that a connection can be had by the various trunk lines entering the city of Memphis with the Mississippi river and the various steamboat and packet companies and other common carriers by water which ply upon the same and its navigable tributaries.

It is then stated that by reason of the peculiarly fortunate situation of the public landing and Wolf river a direct connection can be made between the carriers by river and the carriers by rail in a cheap, practical, and convenient manner, which will be of incalculable benefit and importance to the city of Memphis, and especially to complainant.

(4) Complainant further represents that, recognizing the great need of the city of Memphis for a railway which would engage in the industrial or terminal business, and more especially the great need of the commercial interests of the city for a direct, practical, and convenient connection of the common carriers by rail and the common carriers which ply upon the Mississippi river, which had not theretofore existed, your complainant, the Union Railway Company, did on the 5th day of June, 1902, enter into a contract with the city of Memphis whereby it was granted the right to intersect with and run upon said public landing above described, so that it might properly serve the interests of the public and of the city of Memphis by receiving freight from the carriers by river at that point for transportation to the various industries located and to be located along

its line, and to the various common carriers by rail entering the city of Memphis.

(5) It is further stated that complainant did on the 10th day of August, 1903, purchase what is known as lots 444, 443, 442, 441, and 440 of the original plan of the city of Memphis, fronting upon Chickasaw or Front street, and also upon said public landing, and that it is the owner in absolute fee simple of said above-described lots, with the right to use said public landing in conjunction with the same, and that in the purchase of said lots it acquired this easement and right, and that this public landing was one of the appurtenances, privileges, and easements of and to said lots belonging, which were acquired by your complainant, the Union Railway Company, and that it was and is the purpose of said Union Railway Company to use all of said lots in conjunction with its line of railway for the purpose of receiving, handling, and exchanging freight with the carriers by river by means of said public landing, and that said lots are valuable only for this purpose and are valueless to complainant if they cannot be so used.

(6) It is then charged that on the 27th day of September, 1898, the city of Memphis executed to the Chickasaw Cooperage Company, an alleged lease, under and by virtue of which said company claims to have acquired the right to use and occupy a portion of said public land for a period of ten years with its cooperage plant and in the discharge of its private business, a use totally foreign and at variance with the use of said land for a

public landing or wharf; that on the 14th day of April, 1899, the city of Memphis also made an alleged lease to Williams & Co. for the balance of said public land for a period of ten years beginning on the 17th day of October, 1900, for the purpose of erecting, maintaining, and operating logways, handling lumber and other materials, and for the construction of other improvements proper or necessary for carrying on a sawmill, box factory, and lumber business. At a subsequent date said alleged lease to Williams & Co. was assigned and transferred to the defendant, the Chickasaw Cooperage Company, purporting to give to said defendant the right to construct upon the entire public landing, hereinbefore described, cooperage works, logways, and all houses and improvements proper or necessary for carrying on a sawmill, box factory, lumber business, and cooperage works, and also purporting to give the right to the said defendant to close up the streets and alleys running east and west from said public landing to Front or Chickasaw street.

(7) Complainant further represents that the Chickasaw Cooperage Company is a private corporation engaged in the manufacture of barrels, staves, kegs, and in a general cooperage business, for the profit of its stockholders; that, claiming to be authorized so to do by the above-described so-called leases, it has taken full, complete, and absolute possession of said public landing hereinbefore described; that it has erected upon the same a cooperage plant, dryhouse, and warehouse, and

the remainder of the area of said public landing not so used in filled with lumber and staves stacked one upon the other and very close together, using and consuming, together with said improvements, the entire area of said public landing, to the absolute and entire exclusion of all other persons, and to the absolute and entire exclusion of its use for any other purpose whatsoever; that with every inch of said public land so occupied it is absolutely impossible for the same to be used for the purpose for which it was originally dedicated or to be used, in whole or in part, as a public landing; and that the defendant has taken possession of said public landing and converted the same to its own private use, to the absolute exclusion of the public, to the exclusion of your complainant, to the great and irreparable damage of the public, and the still greater damage to your complainant.

(8) The complainant alleges that, being thus especially and peculiarly damaged and in a manner different from that suffered by the public generally, it is entitled to come into a court of chancery to seek redress for its wrongs by the removal of the obstructions on said public landing, and the specific execution of the trust by the city of Memphis to which said land was given and dedicated for the enjoyment, use, and benefit of the public as a public landing and wharf, by requiring said city to develop and improve the same, and by canceling the aforesaid leases under which defendant claims the right to maintain the nuisance hereinabove set out, to the

great damage of complainant, and the abatement of which nuisance complainant is seeking in this honorable court.

Complainant therefore alleges and charges that said alleged leases under which the defendant, the Chickasaw Cooperage Company, is claiming to hold and occupy said public landing, are absolutely null and void, for the reason that it is the granting of the property of the public to a private corporation to be used for private purposes; that it is the conversion of the public property to a private use, to the great detriment of the public, and to the exclusion of your complainant, who has a right to use the same in the service of the public and for the public's service; that it is the diverting of the use of said land from the use for which it was originally dedicated and set aside, and devoting the same to a private, different, and unlawful use, and permitting it to be used, not only in a manner different from the purpose for which it was originally intended, but in such a manner as to hinder its use, or the use of any part of the same, for the original purpose absolutely impossible; and that its use also renders valueless the above described lots owned in fee simple by the Union Railway Company fronting upon said public landing.

The above allegations present the main controversy in this litigation. It appears however, from the record, that on the 20th day of August, 1902, and prior to the filing of the bill therein, the Union Railway Company filed its petition in the circuit court of Shelby county

against the Chickasaw Cooperage Company, seeking to condemn a right of way described in said petition through said land averring that the interest in said land of the Cooperage Company is as follows:

"That portion lying south of the south line of lot 435 as extended to Wolf river, the Chickasaw Cooperage Company holds under a lease from the city of Memphis, dated September 27, 1898, for a term of 10 years beginning the 17th day of October, 1900, for which it pays the city an annual rental of $355.87.

"That portion lying north of the south line of lot 435 extended to Wolf river, excepting part of lot 439, the defendant cooperage company holds under a lease made by the city of Memphis April 14, 1899, for a term of 10 years from October 17, 1900, to April 17, 1910, to Williams & Co., for which Williams & Co. were to pay $572.04 per year rent; and Williams & Co. subsequently assigned said lots to defendant. Lot 439, across the corner of which this right of way extends, is owned in fee by the Chickasaw Cooperage Company."

It thus appears that the Union Railway Company, at the time it instituted its condemnation suit, had knowledge of the contract of the cooperage company with the city of Memphis, and yet proceeded to condemn said land and take possession of a part thereof. The cooperage company appealed to the circuit court, and pending that appeal the present bill was filed, in which complainant seeks to be relieved of an alleged mistake in seeking a condemnation of said land as the property of the coop-

erage company. The allegations of the present bill on this subject are as follows: "Complainant would further represent that in said condemnation suit of the Union Railway Company against the Chickasaw Cooperage Company, pending in the circuit court of Shelby county, Tenn., heretofore referred to, it erroneously and by mistake alleged that the defendant had a lease to the premises described therein (which are the premises described as the public landing therein) and sought in that suit to condemn a right of way through said alleged leasehold property; that it discovered before the trial of said cause that it was in error as to the property rights of the defendant and had erroneously filed its condemnation suit against the defendant, and asked of the honorable circuit judge permission to amend its pleadings and to show that the defendant had no title and was not privileged to continue further the trial of said suit in the assessment of damages as to the property owned by the city; that the honorable circuit court held that this could not be done in a court of law, and that the only relief of complainant was in this honorable court. Complainant now therefore alleges that it did erroneously allege the title of the defendant, the Chickasaw Cooperage Company, in said condemnation suit; that said defendant is seeking to profit thereby and recover a judgment for damages in said suit against your complainant for compensation for the leasehold interest taken, which defendant did not and does not own; and that your complainant is without remedy in said court and now appeals to

this honorable court to protect it from its error and mistake in said cause pending in said circuit court, and in this bill seeks to enjoin the further prosecution of said suit."

The foregoing extracts from the bill are sufficient to state the case made by the complainant and to raise the questions of law which are presented on the record. The defendant cooperage company first interposed a demurrer to the bill and afterwards filed an answer incorporating therein the original demurrer. During the pendency of the cause, counsel entered into the following stipulation of agreed facts: (1) That the property in question was originally dedicated as a wharf and public landing place; that the dedication for those purposes was accepted by the city and the land for some years was exclusively devoted to that use. (2) The complainant, the Union Railway Company, is a commercial railway, engaged in the transportation of freight and the exchange of freight between connecting carriers and between the various industries and carriers. (3) The Union Railway has secured from the city of Memphis a right of way upon the public landing in question. (4) The Union Railway Company is the owner of lots 440 to 444, inclusive, of the original plan of the city of Memphis, contiguous to and fronting upon said public landing, and possessed of the right to use said public landing in conjunction with said lots. (5) Said public landing is of special and peculiar value to the city of Memphis and the public, and of especial and peculiar

value to the complainant, the Union Railway Company, in that it affords the only means of connection between the various carriers by rail entering the city of Memphis and the carriers by river. The Union Railway Company will use the landing in question for the exchange of freight from the river for the various industries located upon the line of its road, and will in turn transfer freight from such industries to the various packets and carriers plying upon the Mississippi and Wolf rivers. (6) One of the purposes of the Union Railway in establishing its belt line was to form a physical connection with the river trade, and that the right to use this landing is a valuable asset of the complainant, and that the lots heretofore mentioned were purchased by the Union Railway Company with this end in view. (7) Wolf river, opposite the land in question, is navigable, and congress has made an appropriation for keeping the river navigable, and it is now navigable in all respects. (8) The defendant, the Chickasaw Cooperage Company, is a private corporation engaged in the manufacture of barrels, staves, kegs, and a general cooperage business. It has taken full, complete, and absolute possession of said public landing and wharf, and consumes the entire area of the same by storing lumber and staves and other material thereon, so as to make it impossible to use said property as a wharf or landing place, or to use it for any public purposes whatever. Said use and occupation is exclusive save that portion of the landing which is now occupied by the Illinois Central Railroad's

two tracks and the Union Railway Company's one track. (9) That the possession and occupation of said public landing by the cooperage company is under and by virtue of certain leases executed by the city of Memphis to Williams & Co. and the said cooperage company, beginning in 1883 and afterwards renewed. Subsequently a certain contract was entered into between the city of Memphis, the Chickasaw Cooperage Company, Williams & Co., and the Illinois Central Railroad Company, by which the lease of Williams & Co., so made by the city was assigned to the Chickasaw Cooperage Company, and the Illinois Central Railroad Company was permitted to change its tracks running through this property belonging to the city. (10) It was further agreed that a petition was filed in the circuit court of Shelby County by the Union Railway Company for the condemnation of this land; that a jury of view condemned said property and fixed the damages of the Chickasaw Cooperage Company at $15,000. The case was appealed by both parties to the circuit court and a trial was there had before a jury of twelve men, when a verdict for $25,000 and interest was rendered. The Union Railway Company entered a motion for a new trial, which upon consideration of the court was granted, and thereafter the original bill in this case was filed and the cooperage company enjoined from prosecuting the suit in the circuit court, which injunction still stands. (11) It was agreed that a part of these premises had been used as a public landing since 1883, but that since that time the city had been uni-

Railroad v. Cooperage Co.

formly leasing the same out for private purposes, excepting wharfage rights which the city has always reserved and enforced. (12) It was further agreed that a license or lease had been granted by the city of Memphis to the Illinois Central Railroad, or its predecessors to a right of way for two tracks through said property.

The cause was finally heard by Hon. F. H. Heiskell March 29, 1905, when he adjudged void the leases executed by the city of Memphis to the Chickasaw Cooperage Company and to Williams & Co.; the lease to the latter having been assigned to the cooperage company. The chancellor further enjoined the prosecution of the condemnation suit in the circuit court of Shelby county to the extent that it involved the property of the city of Memphis described in the bill.

The Union Railway Company appealed and has assigned errors as follows:

(1) The chancellor erred in not dismissing the amended and supplemental bills because the supreme court of Tennessee has conclusively adjudged by a series of decisions which constitute a rule of property that the city took the property as its own corporate property and has treated it as such, and on the faith of which the defendant's rights have been acquired, and accordingly the plaintiff is not entitled to disturb the defendant's leasehold on the ground that the city occupied the relations of a trustee, holding the land for a public landing.

(2) The chancellor erred in not holding that the

116 Tenn.—39.

leases and ordinances in the bill of complaint set out were legal and valid and within the competency of the legislative council of the city of Memphis to make, enter upon, and retain.

(3) The chancellor erred in not holding that the bill showed on its face that the complainant has no especial and peculiar interest different from any other inhabitant of the city of Memphis in the city's contract alleged to have been executed between the city, Williams & Co., and the cooperage company, and accordingly complainant was not entitled to maintain its suit.

(4) The chancellor erred in not holding that the complainant on its own showing acquired its right long after the execution of said leases with knowledge of the same and that it could not be heard to question their validity in said suit.

(5) The chancellor erred in not holding that the complainant was estopped by reason of the fact, shown in the bill, that it had brought a condemnation suit in the circuit court of Shelby county, alleging the validity of these leases, and showing its knowledge of their existence. The fundamental and controlling question arising on the record is in respect of the nature of the property described as the public landing and the city's authority over the same, whether it holds it as private property, with unlimited power of disposition, or whether it holds it merely in trust for the use of the public.

The further inquiry is presented as a corollary from the proposition last announced, whether in the event it

is determined that the public landing is held by the city as a trustee, exclusively for public purposes, the city may, during a period when said property is not used for public purposes, and there is no demand for such use, lease it out for a term of years to private individuals or corporations for exclusively private purposes.

It is claimed by the cooperage company that this question was settled in favor of its contention in the case of *Wilkins* v. *Railroad,* 110 Tenn., 442, 75 S. W., 1026. In that case the central question was whether under the charter of the city of Memphis and the dedication of the public promenade and the public landing on the map by the original proprietors, the city of Memphis was empowered to authorize the use of such promenade, and such public landing by railroads for depot purposes and terminal facilities.

In *Memphis* v. *Wright,* 6 Yerg., 498, 27 Am. Dec., 489, it appeared that the corporation of Memphis laid off a portion of the promenade in front of the city off the Mississippi river for a steamboat landing, and other portions thereof for a landing for flatboats and other craft. It was contended in that case that the corporation of Memphis had no power or right to change or divert the public dedication as designated on the map without the aid of a court of chancery from their indicated purposes. The court held:  "The mayor and aldermen are the representatives of these corporators and have vested in them all the right to dispose of or apply to any use they may think proper the public promenade, public squares,

etc., which existed in the original proprietors. . . . .
It must therefore be among the powers of a corporate
town, having by its charter the right to do all things
necessary to be done by corporations, to lay off new
streets, squares, lanes, and alleys, and other conven-
iences for the trade and comfort of its citizens, and by
ordinance to regulate the manner in which they shall be
used. These powers are necessary to be done, that the
prosperity of the town may be promoted and that its
business and order may be preserved."

In *Wilkins* v. *Railroad,* supra, this court, in dealing
with *Memphis* v. *Wright,* supra, said: "It is perceived
that the occasion of the decision was the establishment
by the city of a steamboat landing on one portion of the
promenade and of a flatboat landing on other portions
of it, and the regulation of these landings, uses foreign
to the occupation of the ground merely as a promenade;
and it is further perceived that in the broadest terms
it was held by the court in deciding that case that the
city was not bound by the designation upon the map in-
dicating the uses for which the property was intended
by the original proprietors; but, acting through its
board of mayor and aldermen, it might apply to any
new use deemed by them necessary or proper to promote
the welfare of the city."

Continuing, the court said: "We need not consider
whether this case was erroneously decided at the time.
Certainly it is opposed to the current of modern author-
ity. But now, sixty-nine years after this decision was

Railroad v. Cooperage Co.

rendered, during which long period it has been treated
and acted upon as the law governing this particular strip
of land, as a rule of property on the faith of which the
city of Memphis had acted and others had acted, claim-
ing under that municipality and in accordance with
which rights have been acquired and money and labor
expended, after this long time and in face of these con-
siderations, shall this court overrule that decision?
Would it be wise? Would it be just? We think not."

Again the court said: "We must, therefore, adhere to
*Mayor and Aldermen of Memphis* v. *Wright* as establish-
ing a rule of property controlling the strip of land in
controversy. It follows that the city does not in respect
of that property sustain toward the complainant the
relation of trustee, as alleged in the bill, and that the
complainants do not sustain the relation of beneficiaries
in such special trust, and that they cannot maintain the
bill on that theory. And, further, it must be held under
the authority of the case referred to that the city is the
owner of the property and had the right to make any
disposition of it authorized by its charter. This is true
both as to the public promenade and the public landing,
the principle being the same as to each piece of prop-
erty."

It is said on behalf of the *Union Belt Railroad Com-
pany* that *Wilkins* v. *Railroad* is not controlling in the
present instance for the following reasons, viz.: (1) It
was founded exclusively on *Memphis* v. *Wright,* and that
case had established a rule of property in respect of the
particular strip of land involved both in the *Wright* and

*Wilkins Cases.* (2) The particular strip of land invol-
ved in the present case was not involved in *Memphis* v.
*Wright,* nor in *Wilkins* v. *Railroad,* and hence the rule
of property has no application. (3) Neither *Memphis*
v. *Wright,* nor *Wilkins* v. *Railroad* involved the divers-
ion of property held for public purposes to private uses;
but in the *Wright Case* the diversion was of a portion
of the public promenade to the purposes of a public land-
ing and in the *Wilkins Case,* a diversion of land held for
a public promenade and a public landing for depot
grounds and terminal facilities of a railroad corpora-
tion organized to perform duties to the public. (4) The
present case, unlike both the *Wright* and *Wilkins Cases,*
involves the diversion by the city of property held for a
public landing for the purposes of a private corporation
charged with no public uses.

We are of opinion, however, that neither of these rea-
sons is sound: First, because the property involved in
the present litigation was in principle involved both in
*Memphis* v. *Wright* and in *Wilkins* v. *Railroad,* since it
is a part of the public landing which was dedicated on
the map by the original proprietors in 1819. It is true
that the identical strip of land herein was not the basis
of the litigation in the former cases; but the public land-
ing was involved in both of those cases, and the property
herein involved is a public landing, and as such prop-
erty a rule of property was established, and it is imma-
terial whether the identical property was involved. Sec-
ondly, while it is true that neither of the former cases

involved a diversion of land held for a public purpose to a private purpose, yet it was broadly held in both of those cases that the city was the owner of the property and had the right to make any disposition of it authorized by its charter. "This is true," said the court in *Wilkins* v. *Railroad,* supra, "both as to the public promenade and the public landing; the principles being the same as to each piece of property."

As already seen, it was adjudged in *Wilkins* v. *Railroad,* that the ruling in *Memphis* v. *Wright,* supra, established a rule of property both as to the promenade and the public landing, which must be adhered to by the court regardless of the merits of the original legal controversy.

The broad contention on behalf of the Union Railway Company is that property originally purchased or dedicated for public purposes cannot, even for a day, be used for private purposes, although not actually used or needed at the time by the public or any beneficiary of the trust. But exactly the contrary of this proposition was decided by this court in June, 1874, in the case of *Mayor and Aldermen of Memphis* v. *D. R. Grace,* in an unreported opinion delivered by Judge Robert McFarland. The litigation in that case was between the city and its lessees of certain portions of the very land involved in the present suit. The facts of that case are thus stated in the opinion:

"On the 17th day of October, 1865, the board of mayor and aldermen of Memphis passed a resolution agreeing

to lease to D. R. Grace for a term of twenty years, at a rent of $150 per annum, certain premises in the city; the said Grace agreeing to erect marine railways on the premises within one year. This resolution upon its face purports to have been adopted 'for the general prosperity of the city and encouragement of all branches of mechanism.' On the 19th of October, 1865, a lease was duly executed, which simply follows the terms of the resolution, but wherein the terms of the contract are more specifically set forth. Soon after, one Park became to a certain extent jointly interested with Grace in the lease. Afterwards the defendants Eddins & Co. purchased the lease as to a part of the premises, a formal conveyance was executed to them by Grace, and they soon afterwards placed a mill and other improvements upon the premises, to the value in all of between $30,000 and $40,000. Subsequently the city authorities passed a resolution declaring the lease to Grace void for want of power upon the part of the mayor and aldermen to make it, and because the marine railways had not been erected within the time specified. Under this resolution the present bill was filed to declare the lease void and to have the buildings placed upon the premises by Eddins & Co. removed as nuisances. The relief was granted; the defendants Eddins & Co. appealing. It appears that the premises in question are a part of the lands dedicated by the original proprietors to the city of Memphis many years ago. . . . It is said, however, that the city held this property in trust for certain uses in favor of the

public declared by the original proprietors as part of their dedication; that as to this particular lot or parcel of land it is dedicated to the city with 'the intention of the proprietors that there should be on said grounds forever a public landing or landings for public purposes of navigation or trade.' These premises are on Wolf river, near its junction with the Mississippi, and at or about the date of said dedication the place was used as a public landing for purposes of navigation or trade. But it is admitted that for more than twenty years prior to the date of the lease to Grace, owing to changes in the bed of the Mississippi river and other causes, this place has not been used as a public landing; the landing being moved further south. It is not now averred that the public, or any part of the public, desire to use the premises in question as a landing, or that their right to do so is obstructed. So far as this record shows, the city being absolute owner, it had the same absolute power of disposition as other owners, subject only to the rights or easements secured to the public by the proprietors. If the premises were being so used as to deprive the public of their right to use them, in accordance with the intention of the original proprietors, the public would not be without remedy. If the city authorities in making the lease exceeded their power in this respect, we do not hold that the city would be estopped to deny the title to the lease so far as the power was exceeded.

"This bill does not show that the public or the city authorities for the public are seeking to enforce the right

Railroad v. Cooperage Co.

to use the premises in question as a public landing.  On
the contrary, it appears that this right is not claimed;
that is, no one is now desiring to exercise this right.
Whenever the public desires to exercise this right, and
its exercise is in any way interfered with or obstructed,
then a case might be made for the court to enforce the
right and remove the obstruction; but here the public
have for a time abandoned the right.  What is to become
of the property in the meantime?  It is not now used
or needed for a public landing.  Still the city owns it.
May not the city use it for any lawful and useful pur-
pose not inconsistent with the right which the public
may have to again establish a public landing at the place
whenever occasion may require?  We think so.  This
being so, we see no reason why the lease in question
could not be made.  The lessee would no doubt take the
premises subject to the right of the public to reclaim it
as a public landing; but this emergency has not arisen.
Because the premises are not now needed or used as a
public landing, does it follow that the land shall lie un-
occupied and without being used for all time, or until a
public landing is re-established at the place?  We think
not.  As we understand the bill, all that is claimed is
that the improvements made under this lease shall be
removed, the lease declared void, and the premises left
vacant until such time as it may be needed by the public
as a public landing.  We think this relief ought not to
be granted.  The defendants have paid out their money
in good faith, relying upon the title made by the city,

Railroad v. Cooperage Co.

and ought not to be disturbed until such time as the rights of the public appear to be obstructed or interfered with. It is manifestly better that the property be used for the purposes now used than that it be suffered to remain unoccupied and producing no income. Accordingly the decree of the chancellor is reversed and the bill dismissed."

An analysis of the above opinion will show that the court decided that portions of the public landing now in controversy, when not needed or demanded for the use of the public, might be leased to private individuals for private purposes, and that such leases were not *ultra vires* and void. It was further held that such leases could not be rescinded at the suit of the city unless it appeared that the land in question was needed for the immediate uses of the public. It was further adjudged that, if the premises were being so used as to deprive the public of their right to use them in accordance with the intention of the original proprietors, the public would not be remediless.

It was further said that the lessee would no doubt take the premises subject to the right of the public to reclaim it as a public landing, whenever the emergency might arise. It was further held that the defendants, having paid out their money in the erection of valuable improvements, relying in good faith upon the title made by the city, should not be disturbed until such time as the rights of the public appeared to be obstructed or interfered with.

The principles enunciated in *Memphis* v. *Grace,* supra, are conclusive of the validity and enforceability of the leases executed by the city of Memphis to Williams & Co., and to the Chickasaw Cooperage Company.

What, then, are the respective rights of the cooperage Company and the Union Belt Railway Company; it appearing that the construction of a railroad track of the latter on the public landing must result in the destruction of the leasehold interest of the cooperage company and the removal of its buildings and valuable improvements? It is practically conceded that the Union Belt Railroad Company, under its grant from the city, is empowered to occupy a portion of said public landing with its tracks and terminals, and the real question presented is whether the cooperage company is entitled to compensation from the railroad company for the loss of its property so appropriated.

The broad contention made on behalf of the railroad company is that the public landing is held for public purposes, that the railroad company is one of the beneficiaries of the trust, and as such is entitled to the use of the landing for the purposes of navigation and trade in accordance with the dedication of the original proprietors, without being compelled to make compensation therefor. As already stated, the Union Belt Railway Company, acting upon the theory that the cooperage company was lawfully in occupation of the public landing, brought its condemnation suit in the circuit court of Shelby county for the purpose of appropriating

said leasehold interest, or such parts thereof as might be necessary for the occupation of its tracks and terminal facilities on said public landing. A jury of view condemned said property and fixed the damages of the cooperage company at $15,000. The Union Railway Company took possession of the property and laid its track. The case was appealed by both parties to the circuit court, where the damages were assessed by a jury at the sum of $25,000. This verdict, on motion of the Union Railway Company, was set aside, whereupon the present bill was filed, upon the theory that the Union Railway Company was entitled to occupy said public landing with its track without being compelled to make any compensation whatever to the cooperage company, and seeking to enjoin the cooperage company from claiming any compensation, and the further prosecution of its defense to the condemnation suit in the circuit court. An injunction was granted, which, as already stated, on a final hearing, was made perpetual, the chancellor being of opinion that the Union Belt Railway Company, under its grant from the city, was entitled to occupy a portion of the public landing with its tracks without making compensation to the cooperage company.

We are of opinion the decree of the chancellor was erroneous. First. The leases executed by the city of Memphis to the Chickasaw Cooperage Company and to Williams & Co., under the authority of *Wilkins* v. *Railroad* and *Mayor and Aldermen* v. *Grace,* supra, were valid and enforceable. Second. It does not appear that an

emergency has arisen when the public is demanding the use of this public landing. The city of Memphis is not demanding it as trustee of the public, nor is any beneficiary of the trust so demanding it. The use sought to be made of this public landing by the Union Railway Company is exclusive and inconsistent with the rights of the indefinite public as beneficiaries of the trust. The permanent occupation of this landing with railroad tracks and terminal facilities would necessarily exclude the public from that part of the landing so occupied by the Union Railway Company. So upon that theory the Union Railway Company is not entitled to dispossess the cooperage company. Third. The Union Railway Company is entitled to occupy this public landing with the consent of the city of Memphis, but cannot occupy with its railroad tracks and depots any part of the property occupied by the Chickasaw Cooperage Company under its leases from the city without making compensation to the cooperage company. Fourth. The Union Railway Company is entitled to occupy that portion of the public landing leased to the Chickasaw Cooperage Company in the exercise of its right of eminent domain and by making compensation to said lessees.

The case of *Hardy* v. *Mayor,* 10 Heisk., 129, relied on by counsel for the railway company as establishing a rule of property for this case, did not present the precise question with which we are here dealing. The only point adjudged in that case was that the public landing there-

Railroad v. Cooperage Co.

in involved did not revert to the original proprietors because it was used for private purposes.

It is unnecessary to notice other questions so ably presented in the argument, since we are of opinion the question already determined is conclusive of the whole case. The decree of the chancellor is therefore reversed, the demurrer is sustained, and the bill will be dismissed.