CARROLL COUNTY BOARD OF EDUCATION *et al. v.* CALDWELL
*et al.*

(*Jackson*, April Term, 1942.)

Opinion filed May 29, 1942.

MADDOX, MADDOX & MADDOX, of Huntingdon, and R. H. RHODES, of Paris, for complainants.

HOLMES & HOLMES, of Trenton, for defendants.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a bill for a declaratory judgment. In the year 1915, Mrs. Maggie M. Caldwell, the owner in fee of a

certain parcel of land situated in the 20th Civil District of Carroll County, Tennessee, made a common law dedication of the same to complainant, Carroll County Board of Education, and the public, for school purposes. The County Board of Education immediately entered into possession of this land and constructed a frame building thereon, to be used as an elementary school for the community. After being so used for a number of years, the frame building was removed, and in its place a valuable brick building was constructed by the County Board of Education for elementary school purposes. The parcel of land in question was included within the boundaries of the Whitthorne Special School District, after its creation by Chapter 844, Private Acts 1929, of the General Assembly of the State of Tennessee. Thereafter the Special School District constructed on this land a large and costly school house to be used as a high school for the benefit of the school district and the people resident therein. Since the dedication of this land to the public for school purpose, a free elementary and high school was maintained for the public until the 8th day of January, 1941, when the Government of the United States determined to establish a defense project covering among other properties the land here in question. Thereupon complainants, Carroll County Board of Education and the Whitthorne Special School District, entered into a contract with the United States granting immediate possession of the school premises to the latter. In consideration for the granting of immediate possession, and because of the expense and inconvenience to complainants in relocating the schools in the midst of a term, the United States agreed to pay to complainants the sum of $5,000 in full compensation to them for the extra expense incident to establishing the schools in another

location. It was further agreed, however, that by granting immediate possession, complainants in no way waived their claim for fair and adequate compensation for the value of the property taken. Subsequently, the property was appraised by the United States and the value of the same fixed at $24,000, which did not include the $5,000 paid under the contract.

Defendants, Robert L. Caldwell and Sadie Barham, are the children and sole heirs-at-law of Mrs. Maggie M. Caldwell and S. E. Caldwell. By answer, they admit the material allegations of the bill and that the price agreed to be paid by the United States for the land is fair and reasonable. They aver, however, "that the land can no longer be used for the purpose to which it was dedicated; and that, as owners of the fee, they are entitled to the avails of the purchase or condemnation by the Government of the United States."

The chancellor decreed: (1) That defendants are not entitled to receive the value of the improvements placed upon the land; (2) that defendants are entitled to have paid to them the value of the land as of the date of the dedication. Defendants have appealed to this court and assigned errors.

It is the theory of defendants that the improvements erected on the land by complainants were of such a character that when erected they became a part of the land; that when complainants "abandoned" the property for school purposes, or when it could no longer be used for the specified purpose, the rights of complainants, or the public terminated, and defendants, as owners of the fee, became entitled to the whole value of the property, as of the date of the taking by the United States.

■■ Complainants did not, under the facts, "abandon" the property. The United States had the authority

to acquire the property by condemnation proceeding. Had complainants refused to enter into the contract by which immediate possession was yielded to the United States, doubtless condemnation proceedings would have been instituted, under which possession could have been obtained. "Abandonment" is "the intentional relinquishment of a known right." 1 C. J. S., Abandonment, sec. 1, p. 5. Certainly, complainants did not relinquish their rights in the property. This fact is established by the contract itself, wherein it was stipulated that they in no way "waive their claim for fair and adequate compensation for the value of said property . . . which said claim is to be adjusted when and as party of the second part acquires title in fee to said property through proper channels."

The admission of defendants in their answer that the price agreed to be paid by the United States is a fair and reasonable price, "and one which defendants are willing to accept," leaves for adjudication but two questions: Are defendants entitled to the whole of the purchase price agreed to be paid for the property, and if not, on what basis should the price received be allocated between the parties.

██ Complainants owned an easement in the land, for school purposes. Under a common law dedication the public does not acquire a fee in the land, but simply the right to use it for the purposes for which it was dedicated. The fee remains in the owner, and he holds it subject to the easement of the public. *City of Athens* v. *Burkett,* Tenn. Ch. App., 59 S. W. 404; *Scott* v. *State,* 33 Tenn. (1 Sneed), 629.

Complainants entered into possession of the land pursuant to its dedication for school purposes and, in good faith, erected substantial improvements thereon. Neither

they nor the parties making the dedication could foresee that the United States would, in the establishment of a war project, take the property.

■ The purpose for which the land was dedicated contemplated the erection of school buildings. The buildings were erected with the consent of the dedicators for the use and benefit of the public. Complainants had no interest in the enhancement of the value of the land.

In Lewis on Eminent Domain, section 863, it is said:

"Where only an easement is taken and the public use is abandoned, the land reverts to the original owner, but he acquires no right to any accessions which have been placed upon it by the State or its agents. Where a canal was abandoned by the State, it was held that its assignee might remove the materials in the locks and other works. So in another case it was held that a railroad company might remove stone piers from land it proposed to abandon."

By analogy, we think the principle applied by this court in *Southern Ry. Co.* v. *Pouder*, 141 Tenn., 197, 208 S. W., 332, and approved in *Campbell* v. *Lewisburg & N. R. R. Co.*, 160 Tenn., 477, 493, 26 S. W. (2d), 141, are applicable. In *Southern Ry. Co.* v. *Pouder*, the railway constructed a freight depot on a certain lot on assumption that it was entitled to possession. It was held that Pouder, who thereafter was adjudged the owner, would not, in condemnation proceedings by the railway, be entitled to recover for the improvements. The court said [141 Tenn., 197, 208 S. W., 333]:

"It is said that the compensation to which the owner is entitled as against an enterer possessed of the power of eminent domain is merely just compensation for the loss and injury he has sustained; that the improvements placed upon the land are dedicated to public uses and not

to the use and benefit of the freehold; that such improvements are never designed to be incorporated with the soil, except for a purpose attending the possession; and that in proceedings to obtain a legal right to occupy the land there would be no sense in compelling a condemnor to pay for his own property. In other words, such improvements are not built to improve the land, or to enhance its ordinary utility, but to be used as a part of an easement for public purposes, entirely independent of the ordinary uses of the ground. *Justice* v. *Nesquehoning Valley R. Co.*, 87 Pa., 28; *Jones* v. *New Orleans, etc., R. Co.*, 70 Ala., 227; *Toledo, etc., R. Co.* v. *Dunlap*, 47 Mich. [456], 465, 11 N. W., 271; *Newgass* v. *St. Louis, etc., R. Co.*, 54 Ark., 140, 15 S. W., 188; and numerous other cases collected in notes, 6 Ann. Cas., 383, 13 Ann. Cas., 980.''

Had the Carroll County Board of Education desired to acquire the fee in the land in question, under the power of eminent domain possessed by it, in the assessment of damages for the taking the value of the improvements would not have been considered, because placed thereon by complainants in good faith and under authority of defendants. 18 Am. Jur., 258.

In *Searl* v. *School-District*, 133 U. S., 553, 10 S. Ct., 374, 377, 33 L. Ed., 740, the School District erected a school house upon land to which its title was defective. Searl was the holder of the legal title. The School District instituted suit to condemn the land. Searl contended that the moment the school house was completed it belonged to the owner of the land by operation of law. The court said, *inter alia*:

''The occupancy here was in no respect for a private purpose or pecuniary gain, but strictly and wholly for the public use. There could be no presumption that this

public agent intended to confer public property upon a private individual nor were the circumstances such as to impart the character of willful trespass to the entry by the district, or impose liability to the forfeiture of improvements made in discharge of its public duty.''

And:

''In our judgment, the technical rule of law invoked to sustain the defendant's contention that he owned the schoolhouse was inapplicable, and the value of the improvements could not justly be included in the compensation. Numerous well-considered decisions of the state courts announced the same result. *Justice* v. [*Nesquehoning Valley*] *R. Co.*, 87 Pa., 28, 32; *Jones* v. [*New Orleans & S.*] *R. Co.*, 70 Ala. 227; *Lyon* v. [*Green Bay & M.*] *R. Co.*, 42 Wis., 538; [*Chicago & A.*] *R. Co.* v. *Goodwin*, 111 Ill., 273 [53 Am. Rep., 622]; [*Oregon R. &*] *Nav. Co.* v. *Mosier*, 14 Or., 519, 13 P. 300 [58 Am. Rep., 321]; *Morgan's Appeal*, 39 Mich., 675.''

■ Under the common law dedication made in the instant case complainants acquired an interest in the property for school purposes. The structures placed upon the land were the absolute property of complainants, agencies of the State. Equity requires that the title to the structures shall be regarded as distinct from that of the freehold. *Searl* v. *School-District, supra*; *Southern Railway Co.* v. *Pouder, supra*.

■ Applying the broad principles of equity, defendants will be paid out of the $24,000 fund allowed by the United States for the whole property, the value of the land at the time of the taking and complainants will be paid the balance of the fund. Thus defendants will receive the value of their land, just as though no dedication had been made, and the balance of the fund will be

paid to complainants on account of their improvements erected upon the land.

The cause will be remanded to the chancery court of Carroll County for the purpose of determining the proper allocation of the $24,000 upon the basis herein set forth.

The costs of this appeal will be paid one-half, each, by the complainants and defendants.