CITY OF MEMPHIS

*v.*

SAMUEL WATKINS OVERTON, JR., et al.

392 S.W.2d 98.

(*Jackson,* April Term, 1965.)

Opinion filed April 7, 1965.

Petition for Rehearing Denied June 28, 1965.

RAMSAY WALL and THOMAS C. FARNSWORTH, Memphis, SHEPARD, HEISKELL, WILLIAMS, WALL & KIRSCH, Memphis, of counsel, for D. W. McLemore, J. Bayard Boyle, B. Snowden Boyle and Mrs. Jack L. Erb.

ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, NEWTON P. ALLEN, Memphis, for Samuel Watkins Overton, Jr., Mrs. S. Watkins Overton, Mrs. Allen W. Phelps, Mrs. Paul Anderson, Maryanna Wells, Natalie Nickell McDermott and Melvin Hill Hayes.

JAMES W. McDONNELL, JR., Memphis, CANADA, RUSSELL & TURNER, Memphis, of counsel, for Mrs. Catherine O. McDonnell.

PATRICK JOHNSON, SR., FRANK B. GIANOTTI, JR., WILLIAM W. O'HEARN, Memphis, for City of Memphis.

HENRY M. BEATY, JR., Memphis, guardian ad litem for incompetent heirs.

MR. JUSTICE DYER delivered the opinion of the Court.

This cause involves the title to certain realty located within that area dedicated by the original proprietors of the City of Memphis as the public promenade. Suit was brought by the City of Memphis as complainants against the heirs, known and unknown, of said proprietors. For brevity's sake, the City of Memphis will be referred to as the City, while the heirs will be referred to as such.

The suit apparently resulted from negotiations by the City with reference to either the long-term leasing or sale of the realty to a private corporation, for the purpose of construction of a hotel or motel. Incident to that negotiation, it developed a title guaranty policy could not be obtained due to the uncertainty of the City's title.

The particular tract of land thus involved has for many years accommodated a fire station. Although this tract is but a small portion of the total area designated as the promenade, it is apparent that whatever title the City has thereto, it likewise has to the remainder of the promenade and to the public landing area as well.

As noted by the Court of Appeals, whatever title the City has in this land, it holds as representative of the

public, and same was acquired from and under the common law dedication resulting from the recording of a plat of 1820 and the sale of lots with reference thereto.

The record discloses, with one exception, that the City has never undertaken to convey the fee simple title to any portion of the public promenade or landing areas. This exception arose subsequent to a transaction known as the "Batture Compromise", the significance of which will be discussed infra. Also disclosed by the record is the fact that upon a part of the public promenade is situated a public library, having been located thereon pursuant to a declaration of trust.

On the strength of four reported cases of this Court, to wit: (1) *Mayor & Aldermen of Memphis v. Wright,* 14 Tenn. 497, 498 (1834); (2) *Hardy v. Mayor & Aldermen of City of Memphis,* 57 Tenn. 127 (1872); (3) *Wilkins v. Chicago, St. L & N. O. R.R. Co.,* 110 Tenn. 422, 75 S.W. 1026 (1903); and (4) *Union Railway Co. v. Chickasaw Cooperage Co.,* 116 Tenn. 594, 95 S.W. 171 (1906), the Chancellor held that, as concerns this land, a rule of property exists under which the City holds the fee simple title.

The Court of Appeals reversed, holding that if a rule of property did exist, it did not work a divestiture of the fee simple from the heirs.

As the existence and scope of this supposed rule of property is determinative of this lawsuit, it obviously is necessary to examine and discuss these cases *seriatim.* Such examination will be deferred momentarily so that certain underlying rules of law germane to this suit might be stated.

■ First, under the general rule in this State, it is elementary that where property is dedicated for a public use, the public acquires only an easement in the property dedicated. In such a situation, the underlying fee remains either in the dedicator (or his heirs), or its belongs to the abutting property owners where the easement conveyed is for a street or highway. *City of Athens v. Burkett,* 59 S.W. 404 (Tenn.Ch.App.1900); *State v. Taylor,* 107 Tenn. 455, 64 S.W. 766 (1901); *Carroll County Bd. of Educ. v. Caldwell,* 178 Tenn. 671, 162 S.W.2d 391 (1942); 24 Tenn.L.Rev. 1052, 1054; and 11 McQuillen, Municipal Corporations Sec. 33.68 (3d ed. 1964).

Thus, we begin with an assumption that the original proprietors of the City did not intend to surrender their fee simple ownership. Indeed it has long been recognized that a common law dedication:

> * * * consists in the right of way over the land of another, and not of an interest in the land itself; that remains in the owner of the fee, unaffected by the dedication. *Scott v. State,* 33 Tenn. 629, 632-633 (1854).

■ Second, it is axiomatic that this State has long approved of the doctrine of stare decisis. A myriad of cases so declare, including: *Sherfy v. Argenbright,* 48 Tenn. 128 (1870); *Foster v. Roberts,* 142 Tenn. 350, 219 S.W. 729, 9 A.L.R. 431 (1919); and *Staten v. State,* 191 Tenn. 157, 232 S.W.2d 18 (1950).

Indeed, it is unlikely that there is another single principle in our jurisprudence so well founded. Yet, as observed by the late Mr. Justice Brandeis, dissenting in *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815 (1932):

Stare decisis is not \* \* \* a universal inexorable command. 'The rule of stare decisis, though one tending to consistency and uniformity of decision, is not inflexible'. \* \* \* Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right. 285 U.S. at 405—406, 52 S.Ct. 447.

Thus, accepting the fact that the doctrine is well established in this State, it then becomes imperative to discover its scope. In this connection, the late Chief Justice Green in *State ex rel. v. Nashville Baseball Club,* 127 Tenn. 292, 154 S.W. 1151 (1912), wrote:

It is a familar principle that *stare decisis* only applies with reference to decisions directly upon the point in controversy. The point in controversy here \* \* \* was not considered \* \* \*.

Only the points in judgment arising in a particular case before the court are precedents for future decisions. \* \* \*

Doubtless the doctrine of *stare decisis* is a salutary one and to be adhered to on all proper occasions; but it only arises in respect of decisions directly upon the points in issue. 127 Tenn. at 307, 154 S.W. at 1155.

Accord, *Prince v. Prince,* 205 Tenn. 451, 326 S.W.2d 908(1959).

The doctrine of Rule of Property is but a subdivision of that of *stare decisis.* See *Sherfy v. Argenbright,* 48 Tenn. 128 (1870). Both are more concerned with judicial stability and predictability than with technically correct adjudications. Whereas, *stare decisis* generally embraces all areas of the law, a rule of property

connotes a narrower feature, defined by one lexicographer as:

A settled rule or principle, resting usually on precedents or a course of decisions, regulating the ownership or devolution of property. Black, Law Dictionary (4th Ed. 1951).

■ Thus, a rule of property exists only when the points in judgment arising in a prior decision are the same as those in subsequent adjudications. Hence, *dictum* alone will not support a rule of property. Such a rule is, of course, invoked most frequently when commercial or property rights have been acquired or adjusted pursuant to a judgment of a court of competent jurisdiction.

■ However, assuming the existence of an erroneous judicial rule of property, so long as no restraining consideration is present, e. g., vesting of property rights thereunder, a court should re-examine its prior statement(s) and revise same where necessary to preserve the character of the law. *Sherfy v. Argenbright,* supra, and *Foster v. Roberts,* supra. See 14 Am.Jur. Courts Sec. 126.

Bearing these principles in mind, attention will now be focused upon the four cases concluded by the Chancellor to have vested the fee simple title in the City by a rule of property.

The first decision, *Mayor & Aldermen of Memphis v. Wright,* supra, was purely an *in personam* proceeding against the owner of a flat-boat for what amounted to overparking. The original proprietors of the City of Memphis (the dedicators of the land in controversy here) were not parties to this action; nor were their heirs. Nonetheless, the Court said:

The public property belongs to the corporators, and may be appropriated by them to any use they may think proper. The mayor and aldermen are the representatives of these corporators, and have vested in them all the right to dispose of, or apply to any use they may think proper, the public promenade * * * which existed in the original proprietors. 14 Tenn. at 499-500.

Clearly, the question of the ownership of the fee never arose in Wright; as against that defendant, it mattered not whether the City held the fee or merely an easement. Thus, the issue *sub judice,* i. e., ownership of the fee, was not considered in Wright.

Following Wright by some thirty-eight years was *Hardy v. Mayor & Aldermen of City of Memphis,* supra. Unlike the other three cases relied upon by the Chancellor, in the Hardy case the heirs of the original proprietors were before the Court, as was the City. The actual holding in that case was a nonuser or temporary leasing of the ground for purposes other than a public use did not cause a reversion nor give the dedicators the right to reclaim same. The Court said:

In such a case, upon a bill filed for such purpose, a Court of Chancery would compel the specific execution of the trust by causing the removal of obstructions to its proper use. *The use and easement would still remain in the public.* (Emphasis supplied.) 57 Tenn. at 138.

The quoted excerpt obviously does not envisage a situation whereby the fee is held by the City, as the only interest of the public mentioned is termed a use or easement. This is in accord with the principle aforesaid that a common-law dedication does not pass the fee.

In *Wilkins v. Chicago, St. L. & N. O. R. R. Co.* supra, the third case cited and relied upon by the Chancellor, the complainants were property owners seeking to restrain the execution by the City of certain contracts with the railroads. The contracts involved portions of the land here in controversy. Denying the relief, this Court said:

We must therefore adhere to *Mayor and Aldermen of Memphis v. Wright* as establishing a rule of property controlling the strip of land in controversy. * * *

[I]t must be held, under the authority of the case referred to, *that the city is the owner of the property,* and has the right to make any disposition of it authorized by its charter. 110 Tenn. at 461, 75 S.W. at 1035. (Emphasis supplied.)

The Wilkins case discussed numerous cases standing for the proposition that where intervening property rights have become vested as a result of a rule of property, such rule must be adhered to. We do not quarrel with such a principle; but where no such intervening rights exist, the reason for the rule ceases. It is this Court's conclusion, as it apparently was of the Court of Appeals, that no outstanding property rights will be adversely affected by a holding that the heirs retain the underlying fee. We reach this conclusion since, with one exception growing out of the Batture Compromise, the City has never attempted to convey by warranty deed fee simple title to any of the land in controversy.

At this point, brief mention should be made of the Batture Compromise. It arose some ten years after the Wright decision, which the City relies on as establishing a rule of property. Judge Bejach, speaking for a unani-

mous Court of Appeals, 54 Tenn.App. 419, 392 S.W.2d 86, said:

> The batture compromise arose out of a situation which existed in 1844. The controversy compromised was a three way one between the City of Memphis, the Proprietors and their heirs and successors, and Dabney and Martin. * * * All three parties claimed the accretions which had been formed by the Mississippi River and added to the Public Landing and Public Promenade. The controversy was settled by a compromise, under the terms of which all three parties conveyed their rights or claims of title to Seth Wheatley, who, in turn, conveyed to the City of Memphis a part of the land for the purpose of having it conveyed by the City to the United States for establishment of a Navy Yard. This was done. As to the balance of the property involved, Wheatley was to sell same and divide the proceeds, one-half to the heirs of the Proprietors, one-fourth to the City of Memphis, and one-fourth to the other claimants. *The claim of the Proprietors and their successors to the accretions was based on the underlying fee which was burdened by the easement established by the dedication of 1820. Under no other theory could the Proprietors, or their successors, have been entitled to any part of the accretions;* and yet, they received * * * one-half of the proceeds * * *. (Emphasis supplied.)

The significance of this compromise lies in the fact that with the exception of the land deeded away pursuant thereto, the City has never attempted to convey by warranty deed a fee simple title to any of the land in controversy. Thus, in the case at bar, the reason for invoking the doctrine of rule of property, i. e., the protection

of property rights acquired under a judicial decision, is non-existent.

The final case upon which the Chancellor relied is *Union Railway Co. v. Chickasaw Cooperage Co.,* supra. There, as in Wilkins, the heirs were not before the Court. Yet, again as in Wilkins, the Court stated "that the city was the owner of the property." 116 Tenn. at 615, 95 S.W. at 177.

■ For these reasons, we think that the previous decisions upon which the Chancellor relied do not establish a rule of property whereby fee simple title was vested in the City. To so hold would be to ignore the accepted rule of law in this State concerning the effect of a common law dedication, and in addition, the rule of *stare decisis* would be vitiated.

■ Of course, the holding in Hardy, supra, (that neither nonuser nor temporary leasing of the realty to a private party for other than a public purpose) is binding upon the parties here under the doctrine of collateral estoppel. Such doctrine is not to be confused with that of *stare decisis* (nor its subdivision rule of property), the two resting on entirely different foundations.

Accordingly, the judgment of the Court of Appeals is affirmed.

## On Petition to Rehear

The City of Memphis has filed a petition to rehear as result of our original opinion filed 7 April 1965. This petition does not call to the Court's attention any new matter not given consideration in the preparation of our original opinion and for this reason the petition to rehear is denied.