Deaderick, J.,
delivered the opinion of the court.
The complainants, who are the representatives of the original proprietors of the 5,000 acre tract of land upon which, in part, the oity of Memphis is located, filed their bill on the 5th day of November, 1866, against the defendants, in the Chancery Court of Memphis.
The bill alleges that the part of said 5,000 acre tract of land “ lying. North of Auction street, extended, and West of Promenade ' street, if extended, in a direct line to the South bank of Bayou Gayoso and down its South bank to Wolfe river and along the East bank of Wolfe river to where the line of *129 Auction street, if extended, would strike Wolfe river,” was never disposed of by the ancestors . of complainants, nor by any of their heirs or representatives, nor has it ever been partitioned nor apportioned in any manner between complainants, who claim to be the owners thereof as tenants in common.
The bill alleges that about the year 1820, the proprietors laid off the town of Memphis, and they exhibit with their bill, a plan or map of a portion thereof, including the 7 or 8 acres, which is alone described as being a part undisposed of.
The bill also states that Judges Turley, Greene and Reese, of the Surpreme Court of Tennessee, in a matter of arbitration involving the rights of the city of Memphis to the alluvial lands on the margin of the Mississippi, made an award, which is referred to, and, by agreement was made evidence in the cause.
The bill further alleges, that there are three large saw mills located upon said tract of 7 or 8 acres of land so claimed by them, and other erections for the private use of the owners of said mills; and, that these owners of these mills are paying the Mayor and Aldermen of the city of Memphis for the privilege of so using said lands; and, that there are other tenements, occupied upon said land; and, that said Mayor and Aldermen have leased other portions of said land to tenants; all of said owners of said mills, occupants of said tenements and lessees, are together with said Mayor and Aldermen made defendants to the bill. It is charged that all the parties occupying said land are trespassers, and the city of *130 Memphis has no right thereto, and that if the said land was ever used as a “landing,” or dedicated to the public for such use, it was a mere easement in that part of the soil which was the margin of the river, and has ceased to be so used for over 20 years, and having ceased to' be used and being unfit for such use, the right to so use it has ceased.
Complainants admit that the bank along Wolfe river has been, and is still used to fasten flatboats, and rafts, and lumber barges to, and do not seek to disturb such use of the banks, as such use will not disturb their beneficial use and enjoyment of the soil.
Complainants pray for a discovery from the defendants of the nature of their claim to the privileges they are using upon said land; how they hold or acquired the same, and for a cancellation of their several claims, as a cloud upon their title, and that the right to and easement in the public, if any, may, by decree of the court, be declared and confirmed; and, that complainants’ rights as co-tenants may be declared and established, and partition of said land may be made between them according to their respective rights; that defendants account for rent received, and be ejected .from the land as trespassers, and for general relief.
None of the parties in possession of the land answer, and judgments pro confesso are entered against them.
The Mayor and Aldermen of the city of Memphis answer, and admit that the property in controversy *131 is correctly described in the bill, and that they are in possession by themselves and tenants holding the premises for the benefit of the city of Memphis, and stating that the said land had been occupied and used by their predecessors in office, as public property ever since the town of Memphis was incorporated, and their claim thereto has never been abandoned; and plead and rely upon their adverse possession of 7 years and 20 years; that said use and occupation have been evidenced by buildings, erections and improvements thereon, and as a “public landing.” That the lands described, were dedicated to the public as shown by exhibit “A” to the bill, and were deeded in fee to the public by the proprietors, who were the ancestors of complainants. That by the map exhibited with complainants’ bill, the landing in controversy was bounded and marked “public landing,” and that no claim has been made to it by complainants or their ancestors. That for many years after the dedication of said land, boats of all kinds landed there, and that in later times specific places have been assigned as landings for particular kinds of boats, and that flatboats, barges, etc., are required to make their fastenings on the premises in controversy, and for this purpose it is in constant use, and thus affords an income to the city; that the ground in the rear has been kept sufficiently open and free from obstructions to subserve the purposes of the dedication. Respondents admit the leases of parts of the land, which are not at present needed for public use, and which do not obstruct the enjoyment of the uses to *132 which the land was dedicated; that the city authorities have claimed the absolute and exclusive ownership and control of the whole premises, from the time of the dedication until the present, as a public landing and open thorougfare for the use and benefit of the purchasers of lots from the proprietors, and for the public generally, and the property has always been held and used in subordination to the primary purpose of the dedication and they deny any misappropriation or abandonment of the same, nor have the public rights been injured or obstructed by the leases made.
Respondents refer to, and rely upon, and exhibit with their answer a compromise deed submitting the matters in dispute between the proprietors and the city, to the arbitrament of the Judges of the Supreme Court of Tennessee, and their opinion and award thereon.
Testimony was taken by both sides, and upon the hearing complainants’ bill was dismissed, and they have appealed to this court.
Complainants insist that they are entitled to relief upon the ground that no dedication of the ground, or any easement thereon, was ever made to the city of Memphis; and, if, in fact, any dedication or easement was made, that the same has been abandoned by the city, and reverts to them by reason of non-user, and unfitness of the premises for the purposes for which they were dedicated.
By the deed of the “proprietors” of the date of 18th of September, 1828, which was proved, and registered March 4, 1829, it is declared that the “proprietors of the land upon which the town of Memphis *133 has been laid off, having been informed that doubts have arisen in relation to their original intention concerning the same, for the purpose of removing such doubts, do hereby make known and declare the following as their original and unequivocal designs and intentions in relation thereto.” They then proceed to declare, amongst other things, that “ in relation to the ground lying between the Western line of lots No. 1 to 24, inclusive, and the same line continued in a direct course to the South bank of the Bayou Gayoso, and the eastern margin of Wolfe and Mississippi rivers, and between Jackson street extended to the river, and said South bank of the bayou, it was the original intention of the proprietors that there should, on said ground, . forever be a landing or landings for public purposes of navigation or trade, and that the same should be forever enjoyed for these purposes, obligatory on ourselves, heirs, and assignees, but all other rights not inconsistent with the above public rights, incident to the soil, it never was the intention of the proprietors to part with; such as keeping a ferry or ferries on any of the public grounds, an exclusive right to which they always held sacred and never intended to part with, in whole or in part.”
This deed shows that there had been a previous dedication by the proprietors, about the extent or character of which, some misunderstanding existed and which it was the object of the deed to remove. The ground thus described, as to which it is declared in the deed to have been the original intention of the *134 proprietors “ that there should be on said ground, forever, a landing or landings for public purposes of navigation or trade, to be forever enjoyed for these purposes,” includes the ground which is in controversy in this cause.
If there had been no dedication of the land, previous to the execution of the deed, it makes a clear and explicit dedication of the land within the prescribed boundaries for a public landing or landings, and does not restrict the right to any one or Atore points upon the ground to be presently used and appropriated to such use, but is a grant or dedication of the whole for the purposes designated, forever, to be used as the exigencies and demands of trade, or, the future necessities of the city, may require.
But this question of dedication has heretofore been substantially determined by the award of Judges Green, Beese and Turley, of the Supreme Court of Tennesse, who were selected under an agreement entered into by the complainants and those they represent, and the Mayor and Aldermen of the city of Memphis to arbitrate the question of the right of wharfage along the front of certain “ alluvial lands,” including the streets, alleys and public landings, according to rights and titles of the said parties, existing at the time of the submission.
Part, though a small part, of this alluvial formation was upon the land which is the subject of controversy in this cause.
The submission bond, or compromise deed, as it is styled in the record, was entered into in July, 1844, *135 and the award of the arbitrators was published the 8th of January, 1847, in which it is recited that the ownership of the alluvial land on the Western boundary of the 5,000 acres granted to Jno. Rice, and the right to build wharves, and the right to receive wharfage along the entire river limit of Memphis, was in controversy and submitted to them. They then decide and award unanimously, that the Mayor and Aider-men of the town of Memphis are entitled, in law and equity, to receive the wharfage on the alluvial land along the entire river limit of the town of Memphis, being the Western boundary of said grant to John Rice, No. 283. This Western boundary is the boundary of the land in controversy in this cause.
From the opinion of the arbitrators, which accompanies the award, it appears that the proprietors laid off the town of Memphis in 1820, and had an engraved plan or map of the town, representing ' the streets, alleys, squares, landings, etc., and upon this map, the space between the bluff and river, from Jackson street to Bayou Gayoso, was marked “Public Landing;’ and so this space is marked on the map of 1829, made an exhibit to complainants’ bill.
The arbitrators make no reference in their award or opinion, to the deed of 1828, or map of 1829, but base their award in favor of the right of the Mayor and Aldermen of the city of Memphis upon the acts and declarations of the proprietors, and this exhibition of the engraved map or plan of the town, in making sales of lots and their knowledge of and acquiescence in the claim of the authorities of Memphis that the *136 whole of the ground West of Mississippi Row was dedicated to the public.
The dedication North of Auction street, was as unequivocal as that South. The same marked line included both.
The dedication of a right to use the land for a public landing being established, the question of abandonment or forfeiture of that right, as insisted in the bill remains to be considered.
It is true, “the owner of an easement, may destroy the same by actually abandoning the right, as well as the enjoyment, especially if a third party become interested in the. servient estate after such abandonment.” Wash, on Eas. and Serv., 542-3. “But nothing short of an intention so to abandon the right would operate ihat effect, unless other persons have been led, by such acts, to treat the servient estate as if free from the servitude.” Ib.
In some cases, an abandonment of an easement may be presumed or inferred from non-user, but rarely, if ever, unless there has been such a use, by the owner of of the premises, in or over which the easement has been enjoyed, as to indicate a claim of right which is adverse to the enjoyment of the easement. Wash. 551.
There has been no abandonment of the right, but a continued assertion of it; and no such non-user as would constitute evidence of an intention of abandonment, nor any use by complainants indicating, an adverse claim to the enjoyment of the easement.
Athough the chief landing places for boats, are, *137 and have been for many years, below the line of the premises claimed by complainants, yet the proof shows that flatboats do, from time to time, land upon said premises and that they have been claimed by the city and held and controlled by it, and that no claim adverse to the right of possession and use of the city has been made by complainants since the adjudication of the questions submitted to arbitration, until the filing of the bill.
The terms of the dedication and the circumstances under which it was made, did not impose upon the Mayor and Aldermen the obligation of an immediate appropriation of the premises to the intended purposes.
It was well known to the grantors that there would not be, for years to come, a necessity for the use of the whole front dedicated to the purposes of a landing or landings. At the time of the dedication, Memphis was a small place of inconsiderable trade, but it was believed that it would become in after years a great city, and an important commmercial point, and the object of the founders of it was to provide facilities for its trade and commerce adequate to its probable future requirements. They therefore gave the public landing, forever, without any condition that the right should revert, if not improved or appropriated to its intended uses, within any given period; and have sold lots bounded upon this open space, whereby purchasers from them, have acquired the rights to their lots upon the understanding that this open space was permanently dedicated to the public. “And in such a case the proprietors will have lost all power *138 over the subject, and the only power of the court is to ascertain and establish the fact of dedication. It can neither be limited in its extent, nor revoked on the ground of a supposed excess of the dedication beyond the requirements of the public.” 8 B. Monroe 247.
The case in 24 Pickering, 80, is not analogous to this case.
There the town sought to establish the dedication of an easement, by user of the premises and the court held that the occasional, trifling and irregular use made of lands or flats is altogether too imperfect an occupation to prove a dedication.
The case cited, does not hold that occasional use only, or irregular use, where a dedication is established, will defeat the dedication and revest the title in the grantor.
Nor will the fact, that the city authorities have leased the ground, or temporarily appropriated it to different purposes than those contemplated in the dedication of it, give the grantors the right to reclaim it, or cause it to revert to the original owners.
In such a case, upon a bill filed for such a purpose, a Court of Chancery would compel the specific execution of the trust by causing the removal of obstructions to its proper use. The use and easement would still remain in the public. 6 Peters, 507.
The bill in this case seeks to have the rights of complainants declared and established in and to the land, and to have the same partitioned amongst them as tenants in common. To the relief sought, we are of *139 opinion, that the complainants are not entitled, and affirm the decree of the Chancellor dismissing the bill, with costs