CITY OF MEMPHIS, Complainant and Appellee, v. SAMUEL WATKINS OVERTON, JR., et al., and All Persons Non Compos Mentis or Otherwise Under Legal Disability, Defendants and Appellants. —392 S.W.(2d) 86.

Western Section at Jackson. December 6, 1964.

Certiorari Granted by Supreme Court, June 8, 1964.

Affirmed by Supreme Court April 7, 1965.

Ramsay Wall and Thomas C. Farnsworth, Memphis, for D. W. McLemore, J. Bayard Boyle, B. Snowden Boyle and Mrs. Jack L. Erb, appellants; Shepherd, Heiskell, Williams, Wall & Kirsch, Memphis, of counsel.

Armstrong, McCadden, Allen, Braden & Goodman, and Newton P. Allen, Memphis, for S. Watkins Overton, Jr., Mrs. S. Watkins Overton, Mrs. Allen W. Phelps, Mrs. Paul Anderson, Mary Anna Wells, Natalie Nickel McDermott and Melvin Hill Hayes, appellants.

James W. McDonnell, Jr., Memphis, for Mrs. Catherine O. McDonnell, appellant; Canada, Russell & Turner, Memphis, of counsel.

Henry M. Beaty, Jr., Memphis, guardian ad litem.

Frank B. Gianotti, Jr. and William W. O'Hearn, Memphis, for City of Memphis, appellee.

BEJACH, J. This cause involves a suit for declaratory judgment filed by the City of Memphis against the heirs, known and unknown, of John Overton, William Winchester, James Winchester, and John C. McLemore, Proprietors of the City of Memphis at the time same was founded in 1819 on the western part of what is known as the Rice Grant of 5,000 acres. Andrew Jackson had been one of the Proprietors, along with John Overton and

James C. Winchester, but his interest in the land had been acquired by William Winchester and John C. McLemore. By its amended bill, the City of Memphis seeks a declaration that it is the owner in fee simple of lands lying along the Mississippi River west of Front Street and north of Union Avenue in Memphis, Tennessee, known as the Public Promenade and the Public Landing. The Chancellor so decreed, and the defendants have appealed. It should be noted that in its original bill, the City did not claim a fee simple title to the land here involved. That claim was first made in the amended bill, after the Chancellor had sustained the demurrer of J. Bayard Snowden, and it was then made to overcome the contention of that demurrer that, in the absence of a claim of fee simple title, no justiciable question was presented for adjudication. The filing of this suit resulted from negotiations by the City with reference to leasing the property at the northwest corner of Union Avenue and South Front Street for a hotel or motel. Incident to that negotiation it developed that, on account of the uncertainty of the City's title, a title guaranty policy could not be obtained. The particular tract of land thus involved has for many years been used for a fire station.

In this opinion, the parties will be referred to, according to their status in the lower court, as complainant and defendants, or called by their respective names, the City of Memphis being sometimes referred to as the City.

In 1820 the Proprietors of the City of Memphis filed and recorded a plat, drawn by William Lawrence, on which was shown numerous lots, streets, alleys, squares, a Public Landing and the Public Promenade, a part of which is specifically involved in the present litigation. The land west of Mississippi Row, now Front Street, and

north of Jackson Street, now Jackson Avenue, was desig-
nated as the Public Landing, and that south of Jackson
Street and north of Howard's Row, now Union Avenue,
was designated as the Public Promenade. The particular
land involved in this lawsuit is located at the northwest
corner of Union Avenue and South Front Street. It is
300 feet by 113.35 feet in dimensions, and has been for
many years used as the location for a fire station. It is
obvious, however, that whatever title the City has to that
particular land, it likewise has to other parts of the
Public Promenade and the Public Landing. The City of
Memphis was incorporated in 1826, but in the meantime,
the Proprietors had sold lots by reference to the recorded
plat. By deed dated September 18, 1828, and registered
March 4, 1829, the Proprietors undertook to clarify and
resolve doubts about the plat recorded in 1820, and to
assert certain claims retained by them; but the Supreme
Court held, in Hardy v. Mayor and Aldermen of City of
Memphis, 57 Tenn. 127, that the rights, as between the
City of Memphis and the Proprietors or their successors,
must be determined by the recorded plat of 1820. The
record shows that, with the exception of leasehold inter-
ests which will be discussed later, both the land desig-
nated as Public Landing and that designated as Public
Promenade have at all times been used for some public
purpose, though not exclusively for the purposes desig-
nated on the plat. The record also shows that, with the
exception of the deed to the United States Government
for its Custom House, Post Office, and Court House, the
City has never undertaken to deed any part of the prop-
erty by conveyance of a fee simple title, and, in that
case, the deed was only a quit claim deed, and for an
admittedly public purpose. The Cossitt Library is built
on part of the Promenade, under a mere declaration of

trust authorizing that use. One apparent exception to the statement that the City has never conveyed any of the property in fee simple, referred to in Adams v. Memphis & L. R. R. Co., 42 Tenn. 645, and in Wilkins v. Chicago, St. L. & N. O. Railroad Co., 110 Tenn. 422, 446, 75 S.W. 1026, concerns part of this property as to which the City of Memphis had acquired a fee simple title joined in by the Proprietors or their successors. This will be discussed more fully in a later part of this opinion.

The Chancellor, basing his decision on four Tennessee Supreme Court decisions, viz., Mayor and Aldermen of Memphis v. Wright, 14 Tenn. 497, 27 Am.Dec. 489; Hardy v. Mayor and Aldermen of City of Memphis, 57 Tenn. 127; Wilkins v. Chicago, St. L. & N. O. Railroad Co., 110 Tenn. 422, 75 S.W. 1026; and Union Railway Co. v. Chickasaw Cooperage Co., 116 Tenn. 594, 95 S.W. 171, held that the City of Memphis holds fee simple title to all of the property shown on the plat of 1820 as Public Landing and Public Promenade, which includes the particular tract of land involved in the instant case.

Most of the defendants, including the unknown and non compos heirs represented by the Guardian Ad Litem, have appealed. Various assignments of error have been filed in this Court, but these present only two questions, which are:

1. Did the City of Memphis acquire a fee simple title as a result of the dedication by plat from the original Proprietors?

2. If the city did not acquire a fee simple title, may it divert the interest which it did acquire by the dedication for other than a public use?

The contention of defendants is that the public, now represented by the City of Memphis, acquired by the dedication only an easement for public purposes, that the underlying fee remained in the Proprietors, and, consequently, that such underlying fee now belongs to defendants as successors to the interests of the original Proprietors.

Whatever title or interest the City of Memphis has in and to the Public Landing and the Public Promenade, it holds as representative of the public, and same was acquired from and under the common law dedication resulting from the recording of the plat of 1820 and the sale of lots with reference thereto. In order to answer the questions presented, it will be necessary for us to consider and discuss not only the four cases on which the learned Chancellor based his decision, but, also, some cases dealing generally with the title and rights acquired by the public in property dedicated for its use.

■ The general rule in Tennessee is that where property is dedicated for a public use, the public acquires only an easement in the property dedicated, and the underlying fee either remains in the original grantor and his heirs, or belongs to the abutting property owners where the easement conveyed is for a street or highway. State v. Taylor, 107 Tenn. 455, 64 S.W. 766; Hamilton County v. Rape, 101 Tenn. 222, 47 S.W. 416; McCord v. Hays, 202 Tenn. 46, 302 S.W.(2d) 331; Hudson v. Collier, 48 Tenn.App. 386, 348 S.W.(2d) 350; State ex rel. Kincaid v. Hamilton, 109 Tenn. 276, 70 S.W. 619.

In State v. Taylor, 107 Tenn. 455, 64 S.W. 766, one G. W. Gibbs, then the owner of the land, laid off in 1855 the Town of Union City, Tennessee. He laid off and sold

the lots according to the plan which designated numerous streets, including Washington Avenue. In 1867 the Town of Union City was incorporated. In 1884, Union City closed a part of Washington Avenue and opened a new street south of same in the same block. By city ordinance, that part of Washington Avenue which was closed was conveyed to the owner of the property used for the new street which was conveyed to the City in exchange for that portion of Washington Avenue which the City had closed. A building was constructed on that part of Washington Avenue which had been closed, and same was later conveyed to the defendant Taylor, who demolished same and was about to build a new building. The suit was filed by the State on relation of a property owner to prevent the erection of a new building. It was claimed that the conveyance by the Town of Union City of that portion of the street which had been closed was void. From the opinion of the Supreme Court, written by Caldwell, J., we quote as follows:

"It is obvious, under our law, that the ordinance and deed in question were ineffective to pass title to any portion of Washington Avenue to the intended vendee—First, because the corporation did not own the fee in the street; and, secondly, because the easement which it did own was not subject to sale and conveyance. The corporation had only the right to use this street for street purposes. That was the extent of the dedication, and the board had no authority to exceed its limits. The platting of the territory and sale of the lots by the original owner in the manner heretofore recited vested the streets as such, not otherwise, in the municipality, and at the same time passed to the respective lot purchasers the ultimate fee in the soil

to the center of the streets on which they severally abutted. Hamilton Co. v. Rape, 101 Tenn. [222], 225, 47 S.W. 416; Railroad Co. v. Bingham, 87 Tenn. [522], 530, 11 S.W. 705, 4 L.R.A. 622; Smith v. Railroad Co., 87 Tenn. [626], 630, 11 S.W. 709.

By force of its character and the general law, the corporation, upon its organization, became endowed with the proprietorship of the streets, which it received in trust as easements for the convenience of the public. Humes v. Mayor, etc. [of Town of Knoxville], 1 Humph. [20 Tenn.] 403; Mayor, etc. [of City of Nashville], v. Brown, 9 Heisk. [56 Tenn.] 1; Railroad Co. v. Bingham, 87 Tenn. [522], 530, 11 S.W. 705, 4 L.R.A. 622; Smith v. Railroad Co., 87 Tenn. [626], 630, 11 S.W. 709.

So, the corporation had only an easement in Washington Avenue, and that, from its nature, was incapable of alienation and passage to an individual. Hence, to repeat what has already been remarked, the ordinance and deed relied on by the defendant were inoperative, as to the fee, because the corporation did not own it, and, as to the easement, because it was not transferable.'' State v. Taylor, 107 Tenn. 463-464, 64 S.W. 768.

We think the title of the City of Memphis to the streets, squares, public landing and public promenade, dedicated by the Proprietors of the City of Memphis, is in all respects, analagous to that held by Union City in the Taylor case. It has been held, however, by our Supreme Court, that the City of Memphis might use the Public Landing and Public Promenade for other public purposes than those contemplated by the Proprietors at the time of the

dedication, that when not needed for public use, the City might lease parts of same to private individuals or corporations, and that the Proprietors or their successors could not repossess the land for purposes other than those contemplated at the time of the dedication. This brings us to a discussion of the four cases relied on by the Chancellor as the basis for his decree that the City of Memphis holds fee simple title to the land in question.

The case of Mayor and Aldermen of Memphis v. Wright, 14 Tenn. 497, 27 Am. Dec. 489, involved a suit by the City of Memphis to collect a penalty for violation of a City ordinance which had designated parts of the Public Promenade as a landing for steamboats and other parts of same for the landing of flat boats and other craft. The ordinance provided for a penalty of $1.00 per hour for flat boats tying up at that part designated for a steamboat landing. Suit was brought against Wright in a Justice of the Peace court for collection of this penalty. A judgment for $50.00 was recovered. This was appealed by Wright to the Circuit Court, where, at a jury trial, a verdict was returned in favor of the defendant. This was appealed to the Supreme Court where it was reversed on the ground that the trial judge had erroneously charged the jury with reference to the City's right to use the Public Promenade for purposes other than that designated in the dedication. From the Supreme Court's opinion, written by Green, J., we quote as follows:

"The part of the charge complained of assumes that a corporation cannot apply the public property of a town to any new use other than that for which it was designated when the town was originally laid off. In this we are of opinion that the court erred. The public property belongs to the corporators, and may be

appropriated by them to any use they may think proper. The mayor and aldermen are the representatives of these corporators, and have vested in them all the right to dispose of, or apply to any use they may think proper, the public promenade, public squares, etc., which existed in the original proprietors. If this were not so, a thriving town would be exceedingly crippled in the exercise of its corporate rights. Few persons would have sufficient foresight, in laying off a town, to anticipate and provide everything that was calculated to promote its prosperity and good government. It must, therefore, be among the powers of a corporate town, having by its charter a right 'to do all things necessary to be done by corporations,' to lay off new streets, squares, lanes, and alleys, and to construct wharves and other conveniences for the trade and comfort of the citizens, and by ordinances to regulate the manner in which they shall be used. These powers are 'necessary to be done' that the prosperity of the town may be promoted, and that its peace and order may be preserved.

\* \* \* \* \* \*

By the act of incorporation, all the power to condemn, for a particular public use, any portion of the bank of the Mississippi, included in the corporation, which existed in the legislature of the state is transferred to the corporation of Memphis, for the latter clause of the 2d section of the charter of incorporation says it shall have power 'to do all things necessary to be done by corporations.' For the encouragement of trade, the construction of convenient places of landing was 'necessary to be done', and, for the preservation of peace and good order, the designation of particular landings for different kinds of water craft was 'neces-

sary'. But this designation would have been useless had it not been enforced by a penalty; therefore, the corporation had authority to enact the ordinance in question.'' Mayor and Aldermen of Memphis v. Wright, 14 Tenn. 498-501.

Mayor and Aldermen of Memphis v. Wright is a direct authority for the proposition that the City of Memphis is authorized to use the Public Promenade for purposes other than those designated in the dedication of same. The Supreme Court's opinion contains the language, ''The public property belongs to the corporators, and may be appropriated by them to any use they may think proper.'' The opinion says, also, ''The mayor and aldermen are the representatives of these corporators, and have vested in them all the right to dispose of, or apply to any use they may think proper, the public promenade, public squares, etc., which existed in the original proprietors.'' It will be noted, however, that neither the Proprietors nor their successors or representatives were before the court in that case. As against the defendant Wright, it made no difference whether the City of Memphis owned a fee simple title to the public property involved, or only an easement therein. Either would be sufficient for the purposes of the city ordinances involved. As against Wright, the defendant in that case, the language used may be considered appropriate for disposition of the issues before the court; but certainly, it can not be considered binding on the Proprietors or their successors in interest, who were not parties to the suit. It follows, therefore, that, if the language quoted be considered as indicating that the City of Memphis owned a fee simple title to the Promenade, that language must be treated as dictum. The vital part of the decision,

which is not dictum, is that the City did have authority to devote the Public Promenade, or parts thereof, to some public use other than that designated by the dedication.

In the case of Hardy et al. v. Mayor and Aldermen of City of Memphis et al., 57 Tenn. 127, complainants, as representatives of the original proprietors, sought a recovery from the City of Memphis and its lessees of part of the land dedicated as a public landing, together with accretions thereto, and to recover the rentals paid by the tenants to the City of Memphis, on the ground that the land in question was no longer suitable for use as a public landing, that its use as such had been abandoned, and that the property in question had been diverted to other uses and was being leased by the City of Memphis to saw mills and other industries. The Chancellor dismissed the bill, and the Supreme Court affirmed. In its answer, the City of Memphis claimed fee simple title to the land in question by virtue of adverse possession of seven years and twenty years, and that the land in question had been deeded in fee by the original Proprietors. The bill in that cause was filed in 1866, but it refers to and relies, in part, upon a compromise deed involving accretions, which deed had been executed in July 1844, and the award made pursuant thereto in January 1847. From the Supreme Court's opinion, written by Deaderick, J., we quote as follows:

"There has been no abandonment of the right, but a continued assertion of it; and no such nonuser as would constitute evidence of an intention of abandonment, nor any use by complainants indicating an adverse claim to the enjoyment of the easement

Although the chief landing places for boats, are and have been for many years, below the line of the premises claimed by complainants, yet the proof shows that flatboats do, from time to time, land upon said premises and that they have been claimed by the city and held and controlled by it, and that no claim adverse to the right of possession and use of the city has been made by complainants since the adjudication of the questions submitted to arbitration, until the filing of the bill.

The terms of the dedication and the circumstances under which it was made, did not impose upon the Mayor and Aldermen the obligation of an immediate appropriation of the premises to the intended purposes.

It was well known to the grantors that there would not be, for years to come, a necessity for the use of the whole front dedicated to the purposes of a landing or landings. At the time of the dedication, Memphis was a small place of inconsiderable trade, but it was believed that it would become in after years a great city, and an important commercial point, and the object of the founders of it was to provide facilities for its trade and commerce adequate to its probable future requirements. They therefore gave the public landing, forever, without any condition that the right should revert, if not improved or appropriated to its intended uses, within any given period; and have sold lots bounded upon this open space, whereby purchasers from them have acquired the rights to their lots upon the understanding that this open space was permanently dedicated to the public. 'And in such a case the proprietors will have all power over the subject, and the

only power of the court is to ascertain and establish the fact of dedication. It can neither be limited in its extent, nor revoked on the ground of a supposed excess of the dedication beyond the requirements of the public.' 8 B. Monroe. 247

\* \* \* \* \* \*

Nor will the fact, that the city authorities have leased the ground, or temporarily appropriated it to different purposes than those contemplated in the dedication of it, give the grantors the right to reclaim it, or cause it to revert to the original owners.

In such a case, upon a bill filed for such a purpose, a Court of Chancery would compel the specific execution of the trust by causing the removal of obstructions to its proper use. The use and easement would still remain in the public. 6 Peters, 507.

The bill in this case seeks to have the rights of complainants declared and established in and to the land, and to have the same partitioned amongst them as tenants in common. To the relief sought, we are of opinion, that the complainants are not entitled, and affirm the decree of the Chancellor dismissing the bill, with costs.'' Hardy v. Mayor and Aldermen of City of Memphis, 57 Tenn. 137-139.

In the Hardy case, the successors of the original Proprietors were before the court and it was held that nonuser or temporary leasing of the ground for purposes other than a public use did not cause a reversion. A bill in Chancery was suggested as the appropriate remedy for cancellation of such leases, if, as, and when it became necessary for the land to be devoted to a public use. It will be noted that this case was decided long before the

declaratory judgment law was enacted in 1923. In the instant case, the City of Memphis, itself, has sought, under the declaratory judgment law, sections 23-1101—23-1113 T.C.A., a declaration of its rights and prays that it be declared to have a fee simple title to part of the same land involved in the Hardy case. The Hardy case decided that the successors in interest of the original Proprietors were not entitled to recover possession of the land dedicated for a public landing, even though it was no longer used for that purpose and was being temporarily leased to private industry prior to using same for some other and different public use. The decision goes no further than that. Even though the City in that case claimed a fee simple title, and complainant's bill was dismissed, same was not dismissed on that ground, and no adjudication was made that the City of Memphis did own a fee simple title to the land in question. On the contrary, the City's title was referred to as an easement.

In Wilkins v. Chicago, St. L. & N. O. R. R. Co. et al., 110 Tenn. 422, 75 S.W. 1026, a number of owners of property on the east side of Front Street, in Memphis, undertook by their bill to prevent the execution by the City of Memphis of a contract with the Chicago, St. L. & N. O. R. R. Co. and the Illinois Central R. R. Co. which would grant to them additional rights to use part of the property known as the Public Promenade and Public Landing and confirm to them previously granted rights in the same property alleged to have been granted illegally either to them or their predecessors. The theory of the bill was that the City of Memphis held as trustee the rights granted by dedication of the original Proprietors of Memphis. It was claimed that, by virtue of this dedication, the Public Promenade became, upon acceptance by the City, a perpetual pleasure ground for the

people of the City, and that the municipal authorities had no power to sell, donate, or in any manner contract away, for railroad purposes, or any purpose foreign to that indicated by the name which the original Proprietors gave to it. The bill was demurred to, on many grounds, by both the Railroad Companies and the City of Memphis. We need, however, consider only the second, third and fourth of such grounds. There were sustained by the Supreme Court, and were, as follows:

"(2) Because the said complainants in said bill of complaint do not stand in such relation to such contracts and ordinances as to entitle them in law to call in question the validity thereof.

(3) Because the said contracts and ordinances, if illegal, can be challenged or brought in question only by the public authorities, and not by private individuals.

(4) Because the said complainants, and none of them, had or has shown any peculiar and particular injury to them or him or her, suffered and sustained, which entitles the said complainants, or either of them, to maintain the bill of complaint in the cause exhibited."

The Chancellor sustained the demurrers and dismissed complainants' bill, without indicating which of the many grounds of demurrer were good, but the Supreme Court in affirming the dismissal expressly limited its adjudication to sustaining of the three grounds of demurrer quoted above.

In this case, it was contended that the case of Mayor and Aldermen of Memphis v. Wright, 14 Tenn. 497, 27 Am.Dec. 489, decided in 1834, and the case of Hardy v. Mayor and Aldermen of City of Memphis, 57 Tenn. 127,

had established a rule of property with reference to the Public Promenade and Public Landing, which, even if decided incorrectly, should be adhered to. Ruling to that effect, the Supreme Court held that the complainants, as individual property holders, could not question the authority of the City of Memphis to contract with the railroad companies for use by them of part of the Public Promenade and part of the Public Landing.

From the opinion of the Supreme Court, written by Mr. Justice Neil, later Chief Justice, we quote as follows:

"As to the strip of land referred to, it should be premised that the rights of the city and of its inhabitants must be predicated upon the original dedication, and that no weight can be attached to the instrument of September 28, 1828, eight years thereafter. The original dedication by the registration of the map or plan, and the acceptance of the city thereunder, whatever may have been the terms of that acceptance, must control.

\* \* \* \* \* \*

So it is insisted that the complainants are left alone to a construction of the bare map, with the space marked off upon it and designated by the words 'Public Promenade.' And while conceding that, if the question were *res integra,* it should probably be held to be the true construction that this ground was intended only for a pleasure ground, yet it is said that the question has been heretofore settled in this state by a decision rendered in 1834, and that that decision has become a rule of property in respect of the particular strip of land in controversy in the present case. The application of that case is the chief question for consideration.

\* \* \* \* \* \*

We must therefore adhere to Mayor and Aldermen of Memphis v. Wright as establishing a rule of property controlling the strip of land in controversy. It follows that the city does not, in respect of that property, sustain toward the complainants the relation of trustee, as alleged in the bill, and and that the complainants do not sustain the relation of beneficiaries in such special trust, and that they cannot maintain the bill on that theory; and, further, it must be held, under the authority of the case referred to, that the city is the owner of the property, and had the right to make any disposition of it authorized by its charter. This is true both as to the 'public promenade', and the 'public landing'; the principle being the same as to each piece of property.

\* \* \* \* \* \*

It results that we sustain the second, third, and fourth grounds of demurrer.

Having thus held that the complainants do not sustain such a special or peculiar relation to the matters in controversy as that they can maintain the bill, we do not think it proper to pass directly upon the question of the validity of the contracts assailed. Having held that they can be questioned only by the public authorities, or, as respects the streets, by some abutting owner thereon, in so far as they unlawfully affect his rights, in respect of such street on which his property abuts, or by the public authorities, it is manifestly improper that we should go into this matter any further without having before the court some party entitled to make the questions, if any there be, that may arise on that head, as to the existence of which, not having considered that matter, we intimate no opinion one way

or the other." Wilkins v. Chicago, St. L. & N. O. R. R. Co., 110 Tenn. 449-451, 461-465, 466, 75 S.W. 1032-1033, 1035, 1036.

It will be noted that in the Wilkins case the court refers to the City of Memphis as the owner of the property involved, and refers to the statement in Mayor and Aldermen of Memphis v. Wright that "The mayor and aldermen are the representatives of these corporators, and have vested in them all the right to dispose of, or apply to any use they may think proper, the public promenade, public squares, etc., which existed in the original proprietors." The original Proprietors were not, however, parties to either of the suits in which these expressions were used, and, consequently, could not be bound by any such statements. In the instant case, not only are the heirs of the original Proprietors before the court, but the City has expressly prayed for a declaration of rights as against them. In that situation, the rule of property established by the decisions in Mayor and Aldermen of Memphis v. Wright and Hardy v. Mayor and Aldermen of City of Memphis can, in our opinion, go no further than, that, as applied to the Proprietors or their successors in interest, the City may use the Public Promenade and Public Landing for any public purpose, even though such purpose be different from that originally contemplated, and may, until the property is needed for a public use, lease same to private enterprise; and, that, as against outsiders or third parties, no effective complaint can be made by them, as long as the City is acting within the authority granted by its charter. To that extent, but not further, it was held in the Hardy case, where the Proprietors or their successors were before the court.

The case of Union Railway Co. v. Chickasaw Cooperage Co., 116 Tenn. 594, 95 S.W. 171, involved a suit filed in the Chancery Court by the Union Railway Co. which had been granted by the City of Memphis the right to run its railroad tracks along and over the Public Promenade and Public Landing, against the Chickasaw Cooperage Co., which was assignee of a lease made by the City of Memphis to Williams & Company. The Union Railway Co. had previously sought by a condemnation suit in the Circuit Court to acquire the rights of the Chickasaw Cooperage Co. That suit had proceeded to the point where the Railway Co. had been denied the right to dismiss same, and the Chancery suit sought to enjoin further prosecution of the Circuit Court case, and to require the removal, without compensation, to the Chickasaw Cooperage Co. of its plant erected under its leasehold right, because same was for private use and in violation of the purposes for which the property in question had been dedicated. The Chancery Court granted the relief prayed for, but the Supreme Court reversed, holding that the leasehold interest of the Chickasaw Cooperage Co. was valid until reclamation of the property was sought by the City for a public use, and that the Union Railway Co. could acquire same only by condemnation and payment of its fair value. This case reiterated the rule of property announced in Wilkins v. Chicago, St. L. & N. O. R. R. Co. The contention was made that since the Chickasaw Cooperage Co. was using the property for private purposes, the Union Railway Co. under its grant of right to use the property for a public purpose, could take without compensation. The Supreme Court held, on authority of the unreported case of Mayor and Aldermen of Memphis v. D. R. Grace that this could not be done, and that the lease could be cancelled and the

property reclaimed only by suit of the City itself, as and when the property was needed for a public use. It was also contended that the particular property involved was not involved in either Mayor and Aldermen of Memphis v. Wright or Wilkins v. Chicago, St. L. & N. O. R. R. Co., and, therefore, was not bound by those decisions. All of these contentions were held by the Supreme Court to be without merit. From the opinion of the Supreme Court, written by Mr. Justice McAllister, we quote as follows:

"We are of opinion, however, that neither of these reasons is sound: First, because the property involved in the present litigation was in principle involved both in Mayor and Aldermen of Memphis v. Wright and in Wilkins v. [Chicago, St. L. & N. O.] Railroad [Co.], since it is a part of the public landing which was dedicated on the map by the original proprietors in 1819. It is true that the identical strip of land herein was not the basis of the litigation in the former cases; but the public landing was involved in both of those cases, and the property herein involved is a public landing, and as such property a rule of property was established, and it is immaterial whether the identical property was involved. Secondly, while it is true that neither of the former cases involved a diversion of land held for a public purpose to a private purpose, yet it was broadly held in both of those cases that the city was the owner of the property and had the right to make any disposition of it authorized by its charter. 'This is true,' said the court in Wilkins v. Railroad, supra, 'both as to the public promenade and the public landing; the principles being the same as to each piece of property.'

440

As already seen, it was adjudged in Wilkins v. [Chicago, St. L. & N. O.] Railroad [Co.], that the ruling in [Mayor and Aldermen of] Memphis v. Wright, supra, established a rule of property both as to the promenade and the public landing, which must be adhered to by the court regardless of the merits of the original legal controversy.

The broad contention on behalf of the Union Railway Company is that property originally purchased or dedicated for public purposes cannot, even for a day, be used for private purposes, although not actually used or needed at the time by the public or any beneficiary of the trust. But exactly the contrary of this proposition was decided by this court in June, 1874, in the case of Mayor and Aldermen of Memphis v. D. R. Grace, in an unreported opinion delivered by Judge Robert McFarland. The litigation in that case was between the city and its lessees of certain portions of the very land involved in the present suit.

\* \* \* \* \* \*

'It is not now averred that the public, or any part of the public, desire to use the premises in question as a landing, or that their right to do so is obstructed. So far as this record shows, the city being absolute owner, it had the same absolute power of disposition as other owners, subject only to the rights or easements secured to the public by the proprietors. If the premises were being so used as to deprive the public of their right to use them, in accordance with the intention of the original proprietors, the public would not be without remedy. If the city authorities in making the lease exceeded their power in this respect, we do not hold

that the city would be estopped to deny the title to the lease so far as the power was exceeded.

\* \* \* \* \* \*

May not the city use it for any lawful and useful purpose not inconsistent with the right which the public may have to again establish a public landing at the place whenever occasion may require? We think so. This being so, we see no reason why the lease in question could not be made. The lessee would no doubt take the premises subject to the right of the public to reclaim it as a public landing; but this emergency has not arisen.'

\* \* \* \* \* \*

An analysis of the above opinion will show that the court decided that portions of the public landing now in controversy, when not needed or demanded, for the use of the public, might be leased to private individuals for private purposes, and that such leases were not *ultra vires* and void. It was further held that such leases could not be rescinded at the suit of the city unless it appeared that the land in question was needed for the immediate uses of the public. It was further adjudged that, if the premises were being so used as to deprive the public of their right to use them in accordance with the intention of the original proprietors, the public would not be remediless.

It was further said that the lessee would no doubt take the premises subject to the right of the public to reclaim it as a public landing, whenever the emergency might arise. It was further held that the defendants, having paid out their money in the erection of valuable improvements, relying in good faith upon the title made by the city, should not be disturbed until such

time as the rights of the public appeared to be obstructed or interfered with.

\* \* \* \* \* \*

We are of opinion the decree of the chancellor was erroneous. First. The leases executed by the city of Memphis to the Chickasaw Cooperage Company and to Williams & Co., under the authority of Wilkins v. [Chicago, St. L. & N. O.] Railroad [Co.] and Mayor and Aldermen v. Grace, supra, were valid and enforceable. Second. It does not appear that an emergency has arisen when the public is demanding the use of this public landing. The city of Memphis is not demanding it as trustee of the public, nor is any beneficiary of the trust so demanding it. The use sought to be made of this public landing by the Union Railway Company is exclusive and inconsistent with the rights of the indefinite public as beneficiaries of the trust. The permanent occupation of this landing with railroad tracks and terminal facilities would necessarily exclude the public from that part of the landing so occupied by the Union Railway Company. So upon that theory the Union Railway Company is not entitled to dispossess the cooperage company. Third. The Union Railway Company is entitled to occupy this public landing with the consent of the city of Memphis, but cannot occupy with its railroad tracks and depots any part of the property occupied by the Chickasaw Cooperage Company under its lease from the city without making compensation to the cooperage company. Fourth. The Union Railway Company is entitled to occupy that portion of the public landing leased to the Chickasaw Cooperage Company in the exercise of its right of eminent domain and by making compensation to said lessees.

The case of Hardy v. Mayor [etc.], 10 Heisk [57 Tenn.] 129, relied on by counsel for the railway company as establishing a rule of property for this case, did not present the precise question with which we are here dealing. The only point adjudged in that case was that the public landing therein involved did not revert to the original proprietors because it was used for private purposes." Union Railway Company v. Chickasaw Cooperage Co., 116 Tenn. 614-615, 617, 618, 619, 621-623, 95 S.W. 177, 178, 179.

█ It will be noted that in none of the four cases relied upon by the Chancellor, all of which are reviewed and summarized above, did the Supreme Court ever say that the City of Memphis had fee simple title to the Public Landing and Public Promenade. On the contrary, in the only one of these cases to which the Proprietors or their heirs or successors were party, viz., Hardy v. Mayor and Aldermen of City of Memphis, 57 Tenn. 127, the Supreme Court referred to the interest which the City of Memphis had in these properties as an easement, and held that it had not abandoned same by nonuser or temporary leasing of same for nonpublic purposes. Our conclusion is that the rule of property referred to in Wilkins v. Chicago, St. L. & N. O. R. R. Co. and Union Railway Co. v. Chickasaw Cooperage Co., as applied to the City of Memphis, is that it did not forfeit its easement or abandon same by nonuser or temporary diversion to a non public use, and that, as against the heirs and successors of the original Proprietors, no forfeiture occurs, because of diversion to a public use other than that originally contemplated, or because of temporary diversion from any public use by reason of leases executed by the City of Memphis. In Union Railway Co. v. Chickasaw Cooperage Co., the

Supreme Court indicates that if any part of the Public Promenade or Public Landing should be under lease for a non public use when needed for a public use, the City itself would not be estopped to sue for cancellation of the lease; and it may be that the successors in interest of the Proprietors might do the same, for the purpose of putting the land to such public use. Certainly, it has not yet been held that successors of the Proprietors would not have such right. We have neither the authority nor the desire to overrule or modify either or any of the Supreme Court's decisions relied on by the learned Chancellor; but, on the other hand, there can be no justification for extension of these decisions beyond the necessary implications of same. Our conclusion, thus reached, is fortified by consideration of the batture compromise referred to in Hardy v. Mayor and Aldermen of City of Memphis, and in the unreported case of City of Memphis v. Nealis, a certified copy of the opinion in which case was filed as an exhibit in this cause.

The batture compromise arose out of a situation which existed in 1844. The controversy compromised was a three way one between the City of Memphis, the Proprietors and their heirs and successors, and Dabney and Martin. Dabney and Martin had obtained a grant from the State of Tennessee to land west of the Rice Grant, formerly owned by the Proprietors of Memphis, which grant, to some extent, overlapped the Rice Grant. All three parties claimed the accretions which had been formed by the Mississippi River and added to the Public Landing and Public Promenade. The controversy was settled by a compromise, under the terms of which all three parties conveyed their rights or claims of title to Seth Wheatley, who, in turn, conveyed to the City of Memphis a part of the land for the purpose of having it conveyed by the

City to the United States for establishment of a Navy Yard. This was done. As to the balance of the property involved, Wheatley was to sell same and divide the proceeds, one-half to the heirs of the Proprietors, one-fourth to the City of Memphis, and one-fourth to the other claimants. The claim of the Proprietors and their successors to the accretions was based on the underlying fee which was burdened by the easement established by the dedication of 1820. Under no other theory could the Proprietors, or their successors, have been entitled to any part of the accretions; and yet, they received, in the compromise, one-half of the proceeds resulting from the disposition of same. As was said by Mr. Justice DeHaven in Carroll County Board of Education v. Caldwell, 178 Tenn. 671, at page 675, 162 S.W.(2d) 391, at page 393 of the opinion:

"Complainants owned an easement in the land, for school purposes. Under a common law dedication the public does not acquire a fee in the land, but simply the right to use it for the purpose for which it was dedicated. The fee remains in the owner, and he holds it subject to the easement of the public."

The land conveyed by Seth Wheatley to the City of Memphis, in the batture lands compromise, and, in turn, conveyed by the City to the United States for a Navy Yard, was later reconveyed by the United States to the City of Memphis, when the Navy Yard was abandoned. This conveyance by the United States was the source of the City's title which was by it alienated in fee simple in the conveyances referred to in Adams v. Memphis & L. R. R. Co., 42 Tenn. 645 and Wilkins v. Chicago, St. L. N. O. R. R. Co., 110 Tenn. 422, 446, 75 S.W. 1026. It was held in Murdock v. Mayor and Aldermen of Memphis, 47

Tenn. 483, (affirmed by the United States Supreme Court in 20 Wall. 590, 87 U.S. 590, 22 L.Ed. 429), that the City of Memphis, by virtue of this reconveyance by the United States, had acquired an indefeasible title in fee simple. No such title in fee simple has been acquired by the City of Memphis to any other portion of the Public Promenade or the Public Landing.

Our final conclusion is, therefore, that the learned Chancellor erred when he held that the City of Memphis has a fee simple title to the land involved in this cause, or to any other part of the Public Promenade or Public Landing not included in the batture compromise. His decree will be reversed, and a decree in conformity with this opinion will be entered in this Court.

The costs of the cause will be paid by the City of Memphis.

Avery, P. J. (W. S.), and Carney, J., concur.